Nellie RICHARDSON, Fritz Krueger, Tommy Richardson, Bernice Jones, Montie Ray, G. M. Wurzelbacher, Richard T. Wurzelbacher, Robert M. Wurzelbacher, R. B. Bertram, Frank Bell, Doris Bertram, Ralph Brown, Judy Bertram, Gloria Jean Richardson, Rita Jones, Anita J. Frey, Tony Jones, and the Winchester Bank as their Agent, Appellants,

v.

SOUTH KENTUCKY RURAL ELECTRIC COOPERATIVE CORPORATION, Appellee.

Court of Appeals of Kentucky.

Feb. 24, 1978.

Discretionary Review Denied June 27, 1978.

Beverly White, White, McCann & Stewart, Winchester, for appellants.

Meriel D. Harris, Harris & Lyon, Somerset, for appellee.

Before LESTER, PARK and WHITE, JJ.

PARK, Judge.

The defendant-appellee, South Kentucky Rural Electric Cooperative Corporation (South Kentucky RECC), is a nonprofit, nonstock rural electric cooperative incorporated under the provisions of KRS 279.010 to KRS 279.220. The plaintiff-appellants are the former shareholders and liquidating agent of The J. M. Richardson Flooring and Lumber Company (Richardson Flooring), a Kentucky corporation, that was dissolved commencing in 1972. Richardson Flooring had been a customer of South Kentucky RECC for the years 1960 through 1971. In an action commenced in the Pulaski Circuit Court, the appellants sought to recover "capital credit" in the amount of $25,992.08 which had been allocated to Richardson Flooring on the books of South Kentucky RECC. The former shareholders and liquidating agent of Richardson Flooring appeal from a summary judgment granted by the circuit court dismissing the complaint.

During each of the years in question, South Kentucky RECC allocated to "patronage capital" all amounts received from the sale of electricity in excess of actual operating costs and expenses. The patronage capital was then allocated to the capital credit account of each customer of South Kentucky RECC based upon the amount billed to that customer for electric service during the year.

In 1964, South Kentucky RECC paid the sum of $72,957.02 to retire all of the capital credits allocated to its customers for the years 1946–1949. In 1967, South Kentucky RECC paid the sum of $140,148.19 to retire the capital credits allocated to its customers for the years 1950–1954. Since that time, South Kentucky RECC has made no general retirement of capital credits. However, during the years 1962–1974, South Kentucky RECC has paid the sum of $585,548.41 to retire the capital credits of deceased customers.

The former shareholders and liquidating agent of Richardson Flooring assert that there are two reasons why they are entitled to payment of the Richardson Flooring capital credit account of $25,992.08. First, they assert that South Kentucky RECC was under a duty to distribute all surplus revenue rather than allocating such sums to capital credits. Second, they assert that South Kentucky RECC could not retire the capital credits of deceased customers without making a pro rata redemption of the capital credits of all other customers for the years in question.

I

The appellants rely upon subsection (3) of KRS 279.160, which provided:

Revenue not needed for the purposes mentioned in subsection (2) of this section shall be returned to the members as a patronage dividend or refund on a pro rata basis according to the amount of electric energy consumed, services rendered or personal property received, rented or purchased. The patronage dividend or refund shall be payable either in cash, common stock, certificates of indebtedness or other property, or in abatement of current charges for electric energy, services or personal property, or both, or in general rate reductions, as the board of directors may determine.

The appellants claim that capital credits do not constitute a legal method of paying patronage dividends or refunds pursuant to KRS 279.160(3). They further assert that the rights of Richardson Flooring to the

capital accounts accrued prior to the repeal of KRS 279.160 in 1972. (1972 Ky. Acts, ch. 11, § 6).

The appellants assume that all amounts received by South Kentucky RECC for furnishing electric energy in excess of actual operating costs and expenses constituted surplus revenue not needed for the purposes mentioned in subsection (2) of KRS 279.160. If this assumption were correct, there would be serious question whether South Kentucky RECC could retain such sums as capital credits rather than paying them on a pro rata basis to its customers as a patronage dividend or refund. However, subsection (2) of KRS 279.160 provided that the charges made by the cooperative should produce revenue for purposes other than the actual operating costs and expenses of the cooperative. Subsection (2) of KRS 279.160 provided that the charges made by South Kentucky RECC should be fixed so as to produce sufficient revenue for the following purposes:

(a) To pay all legal and other necessary expenses incident to the operation of its system and business, including maintenance cost, operating charges, upkeep, repairs and taxes.

(b) To provide a sinking fund for the liquidation of the principal and interest of obligations and to provide a reasonable surplus in the discretion of the board of directors.

(c) To provide adequate funds to be used as working capital and to acquire property necessary or incidental to the proper conduct of the business of the corporation, and funds for making improvements, extensions and replacements, including the replacement of merchandise and personal property sold in the usual course of business, and to provide for depreciation and contingencies.

(d) To provide other funds needed for the proper conduct of the business.

(e) To maintain the property of the corporation in a sound physical and financial condition to render adequate and efficient service.

In its official notice of the amount of capital credit allocated to each customer, South Kentucky RECC stated:

> Patronage capital is the amount billed for services above the actual operating costs and expenses of that service. These amounts are allocated to each consumer based upon the amount billed for electric service.
>
> This patronage capital is used by your cooperative reducing its indebtedness, on its R.E.A. and C.F.C. loans and other proper purposes. It is, in effect, invested in poles, wires, transformers, sub-stations and other property owned by the cooperative. Without this security of invested ownership, no financing organization would be willing to risk loans of capital to it. That is why the capital credits are put into the electric plant in your behalf, and why they are not being refunded at this time. When it is economically feasible within sound business policy to refund capital credits, they will be retired in the order of the year in which they have accumulated.

It is apparent that the amounts being retained by the cooperative as capital credits were for the purposes authorized by subsection (2) of KRS 279.160.

Under subsection (2) of KRS 279.160, the directors of South Kentucky RECC could utilize revenues for many purposes other than current operating costs and expenses. If the directors determined that such funds were necessary to retire debt, to provide for new plant and equipment, or to provide the necessary working capital for the conduct of the business of the cooperative, there was no surplus revenue which was required to be paid as a patronage dividend or refund pursuant to subsection (3). See *Burley Tobacco Growers's Co-op. Ass'n v. Tipton,* 227 Ky. 297, 11 S.W.2d 119 (1928), and *Burley Tobacco Growers's Co-op. Ass'n v. Brown,* 229 Ky. 696, 17 S.W.2d 1002 (1929). The bylaws of South Kentucky RECC provided that all revenues received by the cooperative in excess of actual operating costs and expenses were received with the understanding that they were furnished by the cooperative's customers as capital.[1] The cooperative was obligated to

---

1. Article VIII, § 2 of the bylaws provided in part:

   > In the furnishing of electric energy, the Cooperative's operations shall be so conducted that all patrons, members and non-members alike will, through their patronage, furnish capital for the Cooperative. In order to induce patronage and to assure that the Cooperative will operate to account on a patronage basis to all its patrons, members and non-members alike for all amounts received and receivable from the furnishing of electric energy. All such amounts in excess of operating costs and expenses at the moment by the Cooperative are received with the understanding that they are furnished by the patrons, members and non-members alike as capital. The cooperative is obligated to pay by credits to a capital account for each patron all such amounts in excess of operating costs and expenses. The books and records of the Cooperative shall be set up and kept in such a manner that at the end of each fiscal year the amount of capital, if any, so furnished by each patron is clearly reflected and credited in an appropriate record to the capital account of each patron, and the Cooperative shall within a reasonable time after the close of the fiscal year notify each patron of the amount of capital so credited to his

   account. All such amounts credited to the capital account of any patron shall have the same status as though they had been paid to the patron in cash in pursuance of legal obligation to do so and the patron had then furnished the Cooperative corresponding amounts for capital.

   In the event of dissolution or liquidation of the Cooperative, after all outstanding indebtedness of the cooperative shall have been paid, outstanding capital credits shall be retired without priority on a pro-rata basis before any payments are made on account of property rights of members. If, at any time prior to dissolution or liquidation, the Board of Directors shall determine that the financial condition of the Cooperative will not be impaired thereby, the capital then credited to patrons' accounts may be retired in full or in part. Any such retirements of capital shall be made in order of priority according to the year in which the capital was furnished and credited, the capital first received by the Cooperative being first retired. In no event, however, may any such capital be retired unless, after the proposed retirement, the capital of the Cooperative shall equal at least forty per centum (40%) of the total assets of the Cooperative.

allocate such patronage capital to the individual capital accounts of its customers on an annual basis. The bylaws further provided that the board of directors could retire capital accounts if the board determined that the financial condition of the cooperative would not be impaired. Any such retirement of capital accounts should be on a first in, first out basis, the patronage capital for the earliest year being first retired. These bylaw provisions are valid and binding. They do not conflict with the provisions of KRS 279.160(3).

## II

■ Because the board of directors of the cooperative retired the capital credits of deceased customers, the appellants argued that South Kentucky RECC cannot discriminate against them by refusing to retire the capital credits of Richardson Flooring, a dissolved corporation. The bylaws of the cooperative provided that the board of directors, at its discretion, had the power to retire the capital credits belonging to a deceased customer prior to the time that such capital credits would otherwise have been retired.[2] The appellants assert that this bylaw violates the requirement of KRS 279.160(3) that all patronage dividends and refunds be on a pro rata basis.

This argument ignores the fact that rural electric cooperatives are expressly authorized to adopt bylaw provisions dealing with the retirement of the interest of deceased members. KRS 279.070(2) provides:

The bylaws may provide for any or all of the following matters:

.  .  .  .  .

(h) . . . the manner of determining the value of a member's interest and provision for its purchase by the corporation upon the death or withdrawal of a member or upon his expulsion or forfeiture of membership or, at the option of the corporation, the purchase of the member's interest at a price fixed by appraisal by the board.

.  .  .

The bylaw provision in question is not invalid. The board of directors of South Kentucky RECC could elect to retire the capital credits of deceased customers without obligating the cooperative to retire capital credits of all customers on a pro rata basis. *Claassen v. Farmer's Grain Cooperative,* 208 Kan. 129, 490 P.2d 376 (1971).

■ In the case of *In re Great Plains Royalty Corp.,* 471 F.2d 1261 (8th Cir. 1973), two cooperatives refused to refund patronage capital credits to the estate of a bankrupt and defunct corporation. The bylaws of the two cooperatives involved in the *Great Plains* case are substantially identical with the bylaws of South Kentucky RECC. The court held that bylaw provisions providing for the early retirement of capital credits upon the "death of any patron" must be construed to apply to the claims of the trustee of a bankrupt corporation against the cooperatives. The court held that a defunct corporation was "de facto dead." With all due respect to the opinion in the *Great Plains* case, we cannot agree that the death of a natural person can be equated with the dissolution or bankruptcy of a corporation.

The bylaws of South Kentucky RECC and the bylaws of the cooperatives involved in the *Great Plains* case all show a recognition of the difference between a natural person and a corporate entity. The bylaws provided for the early retirement of the capital credits upon the death of a customer "if the legal representatives of his estate shall request in writing that the capital

---

2. Article VIII, § 2 of the bylaws also provided:

Notwithstanding any other provision of these By-Laws, the Board of Directors, at its discretion, shall have the power at any time upon the death of any patron, if the legal representative of his estate shall request in writing that the capital credited to any such patron be retired prior to the time such capital would otherwise be retired under the pro- visions of these By-Laws, to retire capital credited to any such patron immediately upon such terms and conditions as the Board of Directors, acting under policies of general application, and the legal representatives of such patron's estate shall agree upon; provided, however, that the financial condition of the Cooperative will not be impaired thereby.

credited . . . be retired." By use of the personal pronoun "his," it is apparent that the bylaws are referring to the death of a natural person. The bylaws of South Kentucky RECC also provided that membership in the cooperative would terminate upon the "death" or "cessation of existence" of a member.[3] The bylaws also provided that upon the "death" or "cessation of existence" of a member of the cooperative, the certificate of membership must be surrendered forthwith to the cooperative.[4] These bylaws clearly recognize the distinction between the death of a natural person and the cessation of existence of a corporate entity. Neither bylaw was discussed in the *Great Plains* case. We conclude that the bylaws of South Kentucky RECC make a distinction between the death of a natural person and the cessation of existence of a corporate entity. Furthermore, there are several valid and rational reasons for making such a distinction.

First, the needs of the surviving members of the family of a farmer or other head of household are usually different from the needs of former shareholders of a dissolved corporation. Second, the liquidation of the corporation is not delayed. The capital credit claim of Richardson Flooring can be assigned to its shareholders on a pro rata basis as a part of the liquidation. Third, and most important, there is no reason to prefer the shareholders of Richardson Flooring over other customers of South Kentucky RECC having capital credits for the years through 1971. If an individual customer had moved out of the cooperative's service area or had gone out of business, he would have as much right to demand retirement of his capital credits as would the former shareholders of Richard-

son Flooring. To require South Kentucky RECC to retire all of the capital credits through 1971 could have disastrous financial effects on the cooperative.

In the *Great Plains* case, the court was applying a North Dakota statute which prohibited any discrimination between customers in the payment of patronage refunds. Kentucky has no such statute. In this case, KRS 279.070(2)(h) clearly authorizes a cooperative to exercise a degree of discretion in the early retirement of the interest of a deceased member of the cooperative. The bylaws of South Kentucky RECC do not violate any of the provisions of KRS 279.010 to KRS 279.220. The decision of the board of directors of the cooperative declining to retire the capital credits of a dissolved corporation was not arbitrary and capricious. The capital credits of a deceased individual customer could be retired by the cooperative without making a pro rata distribution of capital credits to all customers.

III

For the foregoing reasons, the judgment of the circuit court is affirmed.

All concur.

---

3.  Article I, § 7 of the bylaws provided in part:

    Membership in the Cooperative and certificate representing the same shall not be transferable, and, upon the death, cessation of existence, expulsion, or withdrawal of a member, the membership of such member shall thereupon terminate, and the certificate of membership of such member shall thereupon terminate, and the certificate of membership of such member shall be surrendered forthwith to the Cooperative.

4.  Article VII, § 3(a) of the bylaws provided in part:

    Membership in the Cooperative and a certificate representing the same shall not be transferable, except as hereinafter otherwise provided, and upon the death, cessation of existence, expulsion or withdrawal of a member, the membership of each member shall thereupon terminate, and the certificate of membership of such member shall be surrendered forthwith to the Cooperative.