Alice **EVANENKO, Administratrix of the Estate of Jack P. Evanenko, Deceased,**
**Plaintiff and Appellant,**

v.

**FARMERS UNION ELEVATOR, a Cooperative, of Butte, North Dakota, Defendant and Respondent.**

Civ. No. 8746.

Supreme Court of North Dakota.

Oct. 22, 1971.

Rehearing Denied Nov. 16, 1971.

Waldron, Kenner & Halvorson, Minot, for plaintiff and appellant.

Pringle & Herigstad, Minot, for defendant and respondent.

STRUTZ, Chief Justice.

The facts in this case are not in dispute. Plaintiff's decedent for years had been a stockholder, member, and patron of the defendant cooperative. He died on October 28, 1969, and the plaintiff, as administratrix of his estate, has included in the assets of the estate the capital stock which deceased held in the defendant cooperative, together with certain patronage credits which had accrued to his benefit for business done with the defendant. Such pa-

tronage credits totaled $738.82. The administratrix requested the defendant to pay these sums, which request was refused.

After issue had been joined, both parties moved for summary judgment on the ground that there was no genuine issue as to any matter of fact in the case, each claiming to be entitled to judgment as a matter of law. The trial court granted the motion of the defendant, thereby denying the plaintiff's motion for summary judgment and dismissing her complaint. The plaintiff thereupon appealed from the summary judgment entered.

■ Both parties having conceded that there is no genuine issue of fact to be determined in this case, the entry of summary judgment was proper. Rule 56(c), N.D.R.Civ.P.; Montana-Dakota Utilities Co. v. Johanneson, 153 N.W.2d 414 (N.D. 1967).

■ The appellant in her notice of appeal demands a trial de novo in this court. Regardless of the fact that such demand was not contained in the certificate settling the statement of the case, as required by Section 28–27–32, North Dakota Century Code, which section still was in effect at the time of the filing of this appeal, a trial de novo cannot be had in this case because there are no disputed facts for the court to try. Trial de novo merely permits this court to try anew questions of fact.

■ The appeal from the judgment, however, is proper because an aggrieved party may appeal from a summary judgment. Gebeke v. Arthur Mercantile Co., 138 N.W.2d 796 (N.D.1965).

The appellant asks this court to hold, as a matter of law, that the defendant cooperative must liquidate a member's interest in the cooperative on the death of such member. Whether she is correct in this assertion must be determined from our statutes regulating cooperatives and from the articles of incorporation and the bylaws of the cooperative.

The business and affairs of a cooperative shall be managed by a board of directors. Sec. 10–15–25(1), N.D.C.C. Directors who negligently or in bad faith vote for the distribution of assets contrary to the provisions of law or of the articles of incorporation are jointly and severally liable to the cooperative for the value of assets distributed in excess of the amount which could have been distributed without violating the law or the articles of incorporation. Sec. 10–15–31(1), N.D.C.C.

■ This court has held that the bylaws and the provisions of the articles of incorporation constitute a contract between the individual patrons and the cooperative. Lillethun v. Tri-County Electric Cooperative, Inc., 152 N.W.2d 147 (N.D.1967). Thus the provisions of the statutes and the articles of incorporation and bylaws of the defendant cooperative constitute a contract between the patron and the cooperative.

The bylaws of the defendant cooperative in this case provide, among other things, that in the event of the death of a member or if a member ceases to be eligible for membership, or ceases to patronize the association for two consecutive years, or willfully fails to comply with the bylaws and other requirements of the association, or willfully obstructs the purposes and proper activities of the association, "the Board of Directors may terminate his membership." In such event, the fair book value of the shares of common stock of such member shall be determined by the board, and the board shall pay in cash to such member or his heirs or legal representative the value so determined, together with any patronage or other dividends accruing and unpaid, less any indebtedness due from such member to the association. Such payment shall be made within one year after termination of the membership. Article II, Sec. 1(f), Bylaws of Farmers Union Elevator of Butte.

The plaintiff strenuously urges that the word "may," as used in the above bylaw, should, in the event of the death of a

member, be construed as "must," and that termination of such membership of a deceased member is mandatory. In other words, the plaintiff asserts that on the death of a member, the board of directors must terminate the membership of the deceased patron and make payment, within one year of such termination, of any sums due such member. At first glance, it would appear that there is some valid reason for such a view. The deceased party no longer is capable of exercising the rights and privileges of membership or of conducting business with the cooperative. Therefore, to all intents and purposes, his membership was terminated at his death.

In this case, the greater portion of the plaintiff's claim is for patronage dividends resulting from credits to the account of the plaintiff's decedent as a result of business which he did with the defendant cooperative during his lifetime. Section 10–15–33, North Dakota Century Code, requires the board of directors to determine and distribute, at least once each year, the net proceeds of the cooperative. Subsection 5 of this section then goes on to provide that such distribution may be in cash, credits, stock, certificates of interest, revolving fund certificates, letters of advice, or other certificates or securities of the cooperative, in other property, or in any combination thereof. Subsection 6 of this section provides that: "All or any part of the net proceeds may be applied to losses incurred in prior years, * * *"

Thus the law permits the board of directors of a cooperative to allocate such dividends as credits to a patron's account, rather than making distribution in cash. This is a practice which is followed by many cooperatives. The statute permits the board of directors to exercise its discretion as to whether the net proceeds of the cooperative should be paid out as patronage dividends or whether they should be retained by the cooperative and used as working capital.

Courts of few other jurisdictions have had this issue before them. We find that where this question has been considered by the courts, they have held that patronage credits are not such an indebtedness on the part of the cooperative due the patron which can be collected at any time. In Clarke County Cooperative v. Read, 243 Miss. 879, 139 So.2d 639 (1962), a cooperative brought an action against a patron on a note. The patron attempted to offset against his debt certain patronage credits which were due him from the cooperative. The Mississippi Supreme Court held that credits allocated to a patron on the books of a cooperative do not reflect an indebtedness which is presently due and payable by the cooperative to the patron. The court said that such credits represent patronage dividends which the board of directors, acting under statutory authority so to do, had elected to allocate to its patrons, not in cash or other medium of payment which would immediately take such funds out of the working capital of the cooperative, but in such manner as to provide or to retain capital for the cooperative and at the same time reflect the ownership interest of the patron in such retained capital. Such interest then would be paid to the patron at some unspecified time in the future to be determined by the board of directors. See 18 Am.Jur.2d Cooperative Associations, Sec. 15, p. 275.

Thus it will be noted that the patronage credits constitute an interest of the patron in the cooperative which is contingent and not immediately payable. This interest becomes vested only when the board of directors, in the exercise of its sound discretion, determines that such payments can be made in cash without causing undue financial hardship to the cooperative.

It is difficult to see why the death of a member would automatically cause his interest to vest. This would be in clear violation of the principle behind the law re-

lating to cooperative associations, that the vesting of such interest should be the result of a positive declaration by the board of directors, acting in the exercise of its discretion, determining when such interest should vest. The board surely would have the authority, if the financial condition of the cooperative warranted such action, to declare such interest due as of the date of a member's death. However, the board cannot be compelled to jeopardize the financial status of the cooperative by being forced to make such payment, as a matter of law, on the death of any member. It may be that the personal representative of a deceased member may be able to show that the financial condition of the cooperative is such that the denial of the payment by the board of directors within some reasonable period of time after the member's death would be an abuse of discretion. But that question is not before the court on this appeal, since no evidence was introduced as to the financial condition of the defendant cooperative.

■ The plaintiff also prays that the interest of the decedent member represented by the share of capital stock which he held during his lifetime be liquidated and that the defendant be compelled to pay for such stock. The par value of the share which was held by the plaintiff's decedent is $100. This obviously was a share of membership stock. Section 10–15–20(2), North Dakota Century Code, provides that the articles of a cooperative association may require that members own one or more shares of membership stock and that such stock shall be issued or transferred only to a person eligible to become a member and only when such person satisfies other requisites for membership.

The law then goes on to provide that unless the articles provide otherwise, a cooperative may acquire, recall, exchange, redeem, and reissue its stock. Provisions in the articles of incorporation and on the

stock certificate may reserve to the cooperative a prior right to acquire any stock offered for sale, or a right to recall the stock of any stockholder. Sec. 10–15–20(3), N. D.C.C. Thus it will be noted that although the cooperative has the legal right to purchase its stock, even on a prior-right basis, it is not compelled to do so.

Comparing the law in this respect with the law relating to corporations generally, we quote Section 10–19–05, North Dakota Century Code, which provides:

"A corporation shall have the right to purchase, take, receive or otherwise acquire, hold, own, pledge, transfer or otherwise dispose of its own shares, but purchases of its own shares, whether direct or indirect, shall be made only to the extent of earned surplus available therefor, and, if the articles of incorporation so permit or with the affirmative vote of the holders of at least two-thirds of all shares entitled to vote thereon, to the extent of capital surplus available therefor, and subject to the following additional limitations: * * *"

■ Therefore, a business corporation cannot be compelled to purchase its own shares of stock held by a deceased member. Such business corporation cannot purchase such shares unless earned surplus is available for that purpose. Surely the same rule should apply to cooperatives. Here, the plaintiff has introduced no evidence to disclose the financial condition of the defendant cooperative.

For reasons stated in this opinion, we are not able to hold that the defendant cooperative is required to liquidate the interests of the plaintiff's decedent as a matter of law. The judgment of the trial court therefore is affirmed.

TEIGEN, ERICKSTAD, PAULSON and KNUDSON, JJ., concur.