Elvern VARILEK; Robert Anderson, d/b/a Robert Anderson & Sons; Wynia Ranch, Inc., A South Dakota Corporation; Arlo Nelson and Gary Nelson, Individually and as Partners d/b/a Leo Nelson & Sons; Ralph Dertien; and Paul Johnson, Plaintiffs and Appellants,

v.

CHARLES MIX ELECTRIC ASSOCIATION, INC., A South Dakota Cooperative Corporation, Defendant and Appellee.

No. 15211.

Supreme Court of South Dakota.

Argued Sept. 15, 1986.

Decided July 1, 1987.

Rehearing Denied Aug. 12, 1987.

John L. Morgan and Tim D. Tucker of Morgan, Fuller, Theeler & Cogley, Mitchell, for plaintiffs and appellants.

Michael J. Whalen, Lake Andes, Vincent J. Protsch of Mumford, Protsch & Pardy, Howard, for defendant and appellee.

McMURCHIE, Circuit Judge.

The plaintiffs are farmers and ranchers in Charles Mix County, South Dakota, who irrigated their land using electricity sold by the defendant, Charles Mix Electric Association. The defendant is a cooperative corporation which furnishes electrical services throughout rural Charles Mix County and portions of Douglas County. To obtain electrical service, each plaintiff became a member of the cooperative by signing an application form and paying a membership fee.

The plaintiffs also signed a contract for each electric motor they used. Each of the thirty-one contracts involved in this case had a term of at least five years. These contracts required the irrigators to pay an annual minimum charge each year during the term of the contract, whether electricity was used or not. The contract and application form provided that the irrigators would be bound by the cooperative's by-laws and would pay the electric rates as periodically established by the cooperative. The by-laws also granted the cooperative the power to periodically change the rates it charged its members. The only written limitation of the cooperative's power to modify these rates was contained in the contract: "The Consumer agrees that if, at any time, the rate under which the Seller purchases electric energy at wholesale is modified, the Seller may make a corresponding modification in the rate for service hereunder." Other legal and equitable principles govern the cooperative's exercise of this power, but since the plaintiffs sue only on the contract, these other principles will not be addressed.

By resolution dated August 10, 1967, the cooperative board of directors established its original electricity prices for irrigation purposes in a rate schedule called Schedule VII. Under the method of billing first adopted, the irrigators paid an annual minimum charge in the spring, which was computed based on the horsepower rating of each motor used by the irrigators. This annual minimum charge was designed to pay fixed costs and a certain amount of variable costs of the cooperative. Payment of this annual minimum charge entitled the irrigator to a certain amount of electricity without additional charge. In effect, this annual minimum charge was a nonrefundable prepayment. Although the prices charged under this rate structure were modified periodically, it retained its essential features until September 22, 1977.

On that date the board of directors established the irrigation rates for the following year (1978) using a KW Demand rate structure. Under this structure, which was identified as Schedule G, the irrigators paid an annual minimum charge based upon the horsepower rating of each motor used. However, theoretically, under this new rate structure and method of billing, the irrigator did not receive a fixed amount of electricity after paying the annual minimum charge. Instead, the irrigator paid directly for each unit of electricity he used. The cooperative argues that the new rate structure and method of billing abrogated the necessity of credits, while the plaintiffs claim the contract could not be modified to abolish these credits.

The present dispute arose in 1983. The plaintiffs had decided to enroll in the federal government's Payment in Kind program (PIK), and they decided that the cooperative's electricity would not be necessary. The plaintiffs individually and informally expressed their intentions to various employees of the cooperative, stating essentially they would not be using electricity that year. The cooperative later informed the irrigators that the contract required that termination of electric service be in

writing, and insisted that the plaintiffs pay the annual minimum demand charge whether they used electricity or not. The cooperative board of directors later reduced the annual minimum charges for those irrigators who did not use electricity in 1983. The plaintiffs were not satisfied with this reduction and they joined in this action against the cooperative.

The plaintiffs presented three claims to a Yankton County jury. Plaintiffs claimed they terminated their respective irrigation service agreements and alleged that the cooperative could not require annual minimum charges for 1983. They also claimed that if the annual minimum charges were owing, they should be determined according to the original rate schedule (Schedule VII). Finally, and principally, plaintiffs claimed their contracts required the annual minimum charges to be credited to their accounts from 1978 through 1982.

The defendant presented several defenses, including modification of contract and waiver of the original terms of the agreements. The defendant also raised a counterclaim for the plaintiffs' unpaid 1983 annual minimum charges.

The jury returned a verdict for the defendant against all but two plaintiffs. The jury found that Ralph Dertien had terminated his irrigation service agreement and would not be liable on defendant's counterclaim for the 1983 minimum charge. The jury also reduced defendant's award under its counterclaim for Elvern Varilek's 1983 minimum charges. Plaintiffs have appealed, citing four errors by the trial court. Plaintiffs request reversal of only that part of the judgment denying them a credit for the annual minimum charges paid from 1978 to 1982.

## I.

DID THE TRIAL COURT ERR BY REFUSING TO INSTRUCT THE JURY THAT THE ANNUAL MINIMUM CHARGES PAID FROM 1978 TO 1982 MUST BE "CREDITED" TO THE PLAINTIFFS' ELECTRICITY BILLS DURING THOSE YEARS?

The plaintiffs claim they are entitled to a credit against their electricity bills equivalent to the annual minimum charges paid from 1978 to 1982, arguing essentially they were charged twice for the same energy consumption. The contracts between the parties state that the annual minimum charge will be applied against the consumer's electric energy bill each month until all has been paid. Under the original rate structure and method of billing, payment of the annual minimum charge entitled the irrigator to a fixed amount of electricity without additional charge. As stated previously, this changed in 1978.

The plaintiffs proposed the following instruction, which was refused by the trial court:

> You are instructed that the contracts between the parties provide:
>
>> The annual minimum charge shall be applied against the consumer's monthly electric energy bill each month until all has been used.
>
> You are instructed that this provision is clear and unambiguous. The plaintiffs and defendant are bound by this contract provision and you are directed to apply clear meaning and intent to this contractual provision. You are directed not to consider any testimony or evidence that has been presented in relation to any acts or omissions on behalf of plaintiffs which would alter or change the meaning of this contractual provision.

This instruction was properly refused for several reasons. The instruction impliedly mandates that the provision is binding and not subject to modification. *See Dougherty v. Beckman,* 347 N.W.2d 587 (S.D.1984). In addition, the proposed instruction unduly emphasizes this contractual provision to the exclusion of other relevant provisions. The entire instrument must be considered in determining the meaning of the contract. *Chord v. Pacer Corp.,* 326 N.W.2d 224 (S.D.1982).

Most importantly, however, this instruction removes a crucial factual question from the jury. The central theme of plaintiffs' case was that the annual minimum charges paid from 1978 until 1982 had to be

"credited" to their accounts, or essentially refunded to them. This proposed instruction embodied that theme and removed the question of whether any energy charges were included in the annual minimum charge under the revised rate structure. That question was disputed, even by testimony elicited from the defendant's own witnesses. An REA bulletin which advised cooperatives on rate structures explained various rate structures, some which entitled irrigators to a fixed amount of electricity for payment of the annual minimum charge, and some which did not. Perhaps the most important factual question in this trial was which type of rate structure had been chosen by the defendant when it adopted the KW Demand rate structure on September 22, 1977. Since the plaintiffs' proposed instruction would have taken that question from the jury, it was properly refused by the trial judge.

The trial judge did present that question to the jury when he instructed in the following manner:

> If you decide for any or all of the plaintiffs on the question of breach of contract you must then fix the amount of money which will reasonably and fairly compensate him or them for the failure of the defendant to apply the annual minimum charge toward the monthly energy bill for the years 1978 through 1982.

## II.

### DID THE TRIAL COURT ERR BY ADMITTING THE COOPERATIVE BY-LAWS, COST OF SERVICE STUDIES, RATE SCHEDULES, AND THE MINUTES OF THE BOARD OF DIRECTORS' MEETING?

■ Plaintiffs claim that the by-laws did not differ materially from the contracts between the parties and that the by-laws were therefore irrelevant to the principal issue in the case, i.e., whether the plaintiffs were entitled to a credit to their electricity bills for the annual minimum charges paid. The by-laws granted the cooperative board of directors the power to periodically modify the rates it charged its customers, in-

cluding the annual minimum charges. One of the plaintiffs' claims at trial was that the 1983 annual minimum charges had to be those charges contained in Schedule VII. If for no other reason, the by-laws were properly admissible to rebut that claim.

Furthermore, the by-laws constitute a contract between the members and the cooperative. *Evanenko v. Farmers Union Elevator*, 191 N.W.2d 258 (N.D.1971). The by-laws were therefore necessarily and properly admitted to allow the jury to fully understand the contractual relationship between the parties.

■ The introduction of the minutes of the board of directors' meetings and the rate schedules adopted at those meetings was also objected to by the plaintiffs as irrelevant. However, these documents were necessary to establish that the board of directors had changed the rates and that Schedule VII was no longer in effect, even though every contract made reference to an incorporated Schedule VII.

The trial judge also admitted several cost-of-service studies over the objection of the plaintiffs. These studies documented the losses incurred by the cooperative while providing electricity to this class of consumers. For example, these studies showed cooperative losses of approximately $20,000 in 1978, $45,000 in 1979, $18,000 in 1980, $19,000 in 1981, and $104,000 in 1983 on their contracts with the irrigators.

■ The by-laws granted the cooperative broad authority to change or modify the rates for electricity, including the minimum demand charge. The only limitation of that broad grant of power was expressed in the contract and governed the cooperative's power to increase the rates or prices for electricity. The cooperative's power to modify the minimum demand charge was not limited in any manner by the by-laws or the contract. This court must consider and construe the by-laws and the contract as one agreement, giving meaning to all of their provisions, but only if such a construction can consistently and reasonably be made. *GMS, Inc. v. Deadwood Social Club, Inc.*, 333 N.W.2d 442 (S.D.1983). Absent a specific and unambiguous contractu-

al limitation of the cooperative's broad authority to modify the minimum demand charge, it retained that authority as expressly stated in the by-laws. *Oakes Farming Ass'n. v. Martinson Bros.*, 318 N.W.2d 897 (N.D.1982).

 We find the contract and by-laws gave the cooperative the authority to modify the rate structure as it did, but only if consistent with the underlying contractual premise that the irrigators not pay twice for the same consumption of electricity. This question was submitted to the jury when it was instructed to determine whether charges for electricity were included in the minimum demand charge. We also find the contract and by-laws gave the cooperative the authority to increase the rates it charged the irrigators for electricity, but only if such increases corresponded to increases in the cooperative's wholesale cost of electricity, as prescribed by the contract. Finally, by the terms of the contract and by-laws, we find the cooperative had the authority to increase the minimum demand charge in any reasonable amount not violating of the doctrine of unconscionability.

In light of the foregoing decision, the balance of the issues appealed by the plaintiffs are not germane and will not be addressed.

The judgment of the trial court is affirmed.

HENDERSON and SABERS, JJ., FOSHEIM, Retired J., and HEEGE, Circuit Judge, concur.

McMURCHIE, Circuit Judge, sitting for MORGAN, J., disqualified.

HEEGE, Circuit Judge, sitting for WUEST, C.J., disqualified.

FOSHEIM, Retired J., participating.

MILLER, J., not having been a member of the Court at the time this action was submitted did not participate.