76033. GEORGIA TURKEY FARMS, INC. v. HARDIGREE.
(369 SE2d 803)

BEASLEY, Judge.

Mrs. Hardigree sought to recover certain funds from the appellant on behalf of her deceased husband's estate. The case was tried before the judge without a jury on the following stipulated facts.

Georgia Turkey Farms is a Georgia cooperative marketing association of which the deceased was a member in good standing at the time of his death. As a member of the cooperative Hardigree acquired

property interests in the form of stock in the association, revolving fund certificates issued in return for capital contributed to the association, and retained proceeds of the association. Revolving fund certificates represent payments for business conducted with the association by its members. Retained proceeds constitute payments credited to members for business with non-members. At Hardigree's death on August 12, 1980, the amounts credited or allocated to him on the association's books were $500 in capital stock, $47,185.09 in revolving fund certificates, and $11,040.70 in retained proceeds. An additional $4,175.07 in retained proceeds was credited to Hardigree's account on December 31, 1980.

Pursuant to the bylaws of the association, the board of directors offered to pay the estate Hardigree's $500 in capital stock and to begin paying out his revolving fund certificates and retained proceeds as they came due, without interest, as was provided for all living members.

By letter of October 28, 1980, Mrs. Hardigree made demand on behalf of the estate for payment in full of Hardigree's property interest at the time of his death. She contended that the estate was entitled to receive payment within one year of his death under OCGA § 2-10-86 (b) (12) and as was done previously with respect to a member of the association who withdrew in February 1976.

On December 20, 1980, the association amended its bylaws under the procedures in OCGA § 2-10-86 (a) to provide: "In the event a member ceases to be an eligible member, either by death or otherwise: His one share of common stock shall be redeemed at $500; his revolving fund certificates will be paid at the same time as other certificates of that series; and no interest will be paid on those revolving fund certificates . . . ; the retained proceeds that have been allocated to a former member will, if funds are available, be paid in annual installments; and no interest will be paid." Previously, no bylaw required distribution upon a member's death or at any certain time measured from that event. The estate was notified of this amendment and a schedule of proposed payments to be made over a six-year period pursuant thereto.

Mrs. Hardigree filed suit, asserting that this amendment constituted an abuse of discretion on the part of the board of directors in that it would defeat the vested rights of the association shareholders and that the mandatory language of OCGA § 2-10-86 required that similar treatment be afforded to deceased members as given to the member who withdrew in 1976. Accordingly she sought immediate repayment of all funds and interest for any sums not paid within one year of Hardigree's death.

The association countered that the statutory language dealing with repayment to members of their capital investment in the event

of death was permissive and was mandatory only if a member was expelled or withdrew his membership; and that the provision further authorized cooperatives to exercise full discretion to adopt bylaws in regard to the redemption of capital upon the death of a member. By the time judgment was entered on August 25, 1987, the estate had been repaid Hardigree's entire property interest in the manner adopted by the amendment of the bylaws. The association appeals the trial court's holding that the estate was also entitled to interest on that amount since August 12, 1981, one year after Mr. Hardigree's death, which was computed to be $17,337.99.

The questions are whether the controlling statutory language or original bylaws required redemption of Hardigree's retained capital (also referred to as "patronage allocations" or "equity credits") within one year of his death upon demand, and whether the post-demand amendment to the bylaws could affect the estate's claim.

1. OCGA § 2-10-86 provides:

"(a) Each association incorporated under this article, within 30 days after its incorporation, shall adopt for its government and management a code of bylaws not inconsistent with the powers granted by this article. A majority vote of a quorum of the members or stockholders attending a meeting shall be sufficient to adopt or amend the bylaws when notice of the proposed bylaw or bylaws is given prior to the meeting.

"(b) Under its bylaws each association may provide for any or all of the following matters: . . .

"(12) The manner of determining the value of a member's interest and provision for its purchase by the association upon the death or withdrawal of a member or stockholder, upon the expulsion of a member or forfeiture of his membership, or, at the option of the association, by conclusive appraisal by the board of directors, provided that in case of the withdrawal or expulsion of a member, the board of directors shall equitably and conclusively appraise his property interests in the association and shall fix the amount thereof in money, which shall be paid to him within one year after such expulsion or withdrawal."

Mrs. Hardigree contends that the omission of the word "death" in the proviso to subsection (b) (12) after it had been included in the first part was merely a clerical error or omission and that it was not the legislative intent to exclude deceased members from the mandatory one-year period for repayment of investments. Georgia law and cases, as well as decisions from other states construing similar statutory provisions governing cooperative associations, convince us that this interpretation is not consistent with the purposes of such legislation. Nor does such a construction comport with the rule that "[s]tatutes should be read according to the natural and most obvious

import of the language, without resorting to subtle and forced constructions, for the purpose of either limiting or extending their operation. [Cit.]" *Integon Indem. Corp. v. Canal Ins. Co.*, 256 Ga. 692, 693 (353 SE2d 186) (1987).

In subsection (a) of OCGA § 2-10-86 the legislature in mandatory language directs that associations "incorporated under this article, within 30 days after its incorporation, *shall* adopt . . . a code of by-laws not inconsistent with the powers granted by this article." Subsection (b) is an enabling provision in permissive language and suggests that these associations in their bylaws adopted pursuant to subsection (a) *"may provide for any or all* of the following [twelve] matters." (Emphasis supplied.) The twelfth of these optional matters, quoted above, is the one at issue here. Even if item (b) (12) is considered mandatory, it makes a specific exception only as to expelled or withdrawn members, which Hardigree was not. There is nothing in the statutory language to imply that the omission of the word death from the mandatory payment requirement was simply a "clerical error."

"[T]he general rule is that where 'the language of a statute is clear, direct, and positive, leading to no absurd results, and affording a suitable, if not a sufficient remedy for an existing evil, courts should be governed by the obvious meaning and import of its terms.' [Cits.] . . . So, this court has held that language contained in a statute which, given its ordinary meaning, commands the doing of a thing within a certain time, when not accompanied by any negative words restraining the doing of the thing afterward, will generally be construed as merely directory and not as a limitation of authority, and this is especially so where no injury appeared to have resulted from the fact that the thing was done after the time limited by the plain wording of the Act. [Cits.]" *Barton v. Atkinson*, 228 Ga. 733, 738-739 (1) (187 SE2d 835) (1972).

A similar statutory provision was considered in *Driscoll v. East-West Dairymen's Assn.*, 122 P2d 379, 380 (Cal. App. 1942). The court rejected an argument that under the statutory language reciting that an association "may provide for ' . . . the manner of determining the value of a member's interest and provision for its purchase by the association upon the death or withdrawal of a member' . . . no discretion nor alternative remains in the association in regard to its by-laws; in other words, that all associations are commanded to adopt by-laws and that such by-laws are set forth in the section quoted. . . . The legislature, in adopting the provisions setting up a voluntary non-profit organization, would not ordinarily cast the mandatory provisions in permissive form. If it had been the legislative intent to set up a rule of conduct for all such associations and to prescribe and limit the rights and liabilities accruing through member-

ship therein, it would have done so without the unnecessary mechanics of separate by-laws for each organization to be thereafter formed." Accord *Claassen v. Farmers Grain Co-op.*, 490 P2d 376 (Kan. 1971); *Evanenko v. Farmers Union Elevator*, 191 NW2d 258 (N.D. 1971). We agree and conclude that OCGA § 2-10-86 grants to cooperative associations full discretion to adopt bylaws relating to the redemption of capital interests in the event of a member's death, without any limitation on the time this redemption is to occur.

2. We further conclude that the association was authorized to amend its bylaws to provide the time and manner of such redemption after Mr. Hardigree's death and Mrs. Hardigree's demand for immediate payment was made, because no existing bylaw required such payment in the event of death and in the absence of any statutory or contractual right to immediate payment, the time for payment remained in the discretion of the board of directors. The statute allows amendments to be made at any time pursuant to proper notice and a quorum vote, which occurred here and is not contested. "Redemption of patronage allocations is a matter within the discretion of the directors of the co-operative. It is well established that 'equity credits allocated to a patron on the books of a co-operative do not reflect an indebtedness which is presently due and payable by the co-operative to such patron. Such equity credits represent patronage dividends which the board of directors of a co-operative, acting under statutory authority so to do, has elected to allocate to its patrons, not in cash or other medium of payment, which would immediately take such funds out of the working capital of the co-operative, but in such manner as to provide or retain capital for the co-operative . . . and at the same time reflect the ownership interest of the patron in such retained capital. Equity credits are not an indebtedness of a co-operative . . . but represent an interest which will be paid to them at some unspecified later date to be determined by the board of directors.'" *Howard v. Eatonton Co-op. Feed Co.*, 226 Ga. 788, 791 (2) (177 SE2d 658) (1970). See also the 1985 edition of 18 AmJur2d 292, Cooperative Assns., § 23, which contains substantially the same language as *Howard* quoted from an earlier edition but makes clear that "[e]quity credits are not an indebtedness of a cooperative *which is presently due and payable to the members*, . . ." (Emphasis supplied.) It adds: "The death of a member does not automatically cause his interest to vest," citing *Evanenko*, supra.

The bylaws of the association in effect at the time of Mr. Hardigree's death followed the statutory directive by providing for distribution of capital interests at the discretion of the board of directors, which consisted of the entire membership in the association, in the following manner:

"Section 3. Revolving Capital. In order to further the cooperative

character of this association, the association shall revolve its capital evidenced by revolving fund certificates and by credits from time to time as funds are determined by the board of directors to be available for that purpose, but, except as hereinafter provided, the capital that is selected to be retired in a given year, in whole or on a pro rata basis, shall be the oldest, by years, outstanding and unexhausted capital of the type selected.

"Notwithstanding any other provisions of these bylaws, the board of directors at its discretion shall have the power at any time to pay off or retire or secure a release or satisfaction of any revolving fund certificates and capital reserve credits to compromise or settle a dispute between the owner thereof and the association, or for the purpose of facilitating the settling of an estate of a deceased or bankrupt owner thereof or to close out the owner's interest when he has moved from the territory served by the association."

It was noted by the North Dakota Supreme Court in regard to a similar provision, "that the patronage credits constitute an interest of the patron in the cooperative which is contingent and not immediately payable. This interest becomes vested only when the board of directors, in the exercise of its sound discretion, determines that such payment can be made in cash without causing undue financial hardship to the cooperative. It is difficult to see why the death of a member would automatically cause his interest to vest. This would be in clear violation of the principle behind the law relating to cooperative associations, that the vesting of such interest should be the result of a positive declaration by the board of directors, acting in the exercise of its discretion, determining when such interest should vest. The board surely would have the authority, if the financial condition of the cooperative warranted such action, to declare such interest due as of the date of a member's death. However, the board cannot be compelled to jeopardize the financial status of the cooperative by being forced to make such payment, as a matter of law, on the death of any member." (Indention omitted.) *Evanenko v. Farmers Union Elevator*, supra at 261, 262.

We agree that the estate's vested interest in Hardigree's equity credits did not include any vested right to patronage redemption at a time other than in the sole discretion and sound business judgment of the board of directors, as no statute or pre-existing bylaw or contractual right required otherwise. See 18 AmJur2d, Cooperative Assns., § 14 (1985 ed.).

When Mrs. Hardigree made her demand for immediate payment, there had been no previous death of a member. The only member who had withdrawn was entitled to receive just $6,898, a sum which the board then found financially feasible to redeem in full. However, the board feared that the large amount demanded by the Hardigree

estate could jeopardize the financial status of the association, especially if further deaths or withdrawals occurred to drain its finances. It then acted to amend its bylaws in order to formulate a consistent, rather than an ad hoc, policy for redemption of patronage dividends. The manner adopted was to provide that such credits be paid out at the same time and rate to deceased or withdrawn members as to current members, and without interest. As this was a legitimate business concern, the action of the board of directors was fully within its discretion. The amendment did not abrogate any contractual right vested in Hardigree prior to his death, for earlier payment to his estate on account of his death.

"Permeating each of the conclusions herein is the general consideration that cooperative marketing associations are fostered and encouraged by legislative enactment and judicial construction; that the inception of these organizations was deemed to be for the personal benefit of members only to the extent that the individual profited through the operation of the enterprise; and that the paramount concern was not the advancement of the individual interest as such. Furthermore, a member's demand for service is responsible for the creation of a cooperative association and as a means of marketing his produce during the period of his membership, and there is no logical ground upon which a member should be permitted to withdraw his interest at the expense of disturbing the financial condition or the life of the association." *Claassen v. Farmers Grain Co-op.*, supra at 381. Since the association has already redeemed all the equity credits held by Hardigree at the time of his death, and he is entitled to no interest thereon under any statutory or contractual right existing at the time of his death to payment within one year, and the bylaws as amended provide otherwise, judgment awarding such interest was in error.

*Judgment reversed. Birdsong, C. J., and Banke, P. J., concur.*

DECIDED MAY 19, 1988.

*W. Woodrow Stewart*, for appellant.
*Gregory W. Blount*, for appellee.
*Ronald E. Barab*, amicus curiae.