25799. HOWARD v. EATONTON CO-OPERATIVE
FEED COMPANY.
25993. LANKFORD v. EATONTON CO-OPERATIVE
FEED COMPANY.
25994. GARDNER v. EATONTON CO-OPERATIVE
FEED COMPANY.

ARGUED MAY 11, 1970—DECIDED OCTOBER 8, 1970—
REHEARING DENIED OCTOBER 22, 1970.

*D. D. Veal*, for appellants.

*Webb, Parker & Ferguson, Paul Webb, Jr., Rice & Rice, William A. Rice*, for appellee.

GRICE, Justice. These appeals are from judgments in favor of a farmer's co-operative in separate actions to collect dairy feed and supply accounts allegedly assigned to it by another co-operative. Each defendant admitted his individual account but denied the assignment to plaintiff, sought setoff of his account payable against his patronage allocation which was also allegedly assigned to the plaintiff, and prayed for certain equitable relief.

The actions were filed in the Superior Court of Putnam County by Eatonton Co-operative Feed Company, hereinafter referred to as the plaintiff, against J. T. Howard, C. A. Gardner, and Louis Lankford, hereinafter referred to as the defendants. The trial court granted the plaintiff's motion for summary judgment in each of the cases, and the defendants have appealed to this court.

Although the three defendants filed separate notices of appeal, only one record, that involving the defendant Howard, was transmitted to this court, and counsel have stipulated that the other defendants are to be considered as in the "same legal status and position."

The roots of this controversy are the 1968 merger of the Eatonton Co-operative Creamery with the Atlanta Dairies Co-operative; the simultaneous formation of the plaintiff; and the transfer to the plaintiff of the assets of the feed division of the creamery, which included the accounts receivable and the patrons' allocations or "equities" for business previously done with the feed division, such assets and liabilities having been excluded from the merger.

The defendants contend, in essence, that the feed division assets so held by the plaintiff belong to them as patrons of the

feed division of the former creamery; that these assets were held in trust for them by the creamery; that the organization of the plaintiff was illegal as to them; that the transfer to the plaintiff of such assets was an illegal take-over; and that in addition to injunction, the defendants are entitled to stated credits and recovery of the amount in excess of the plaintiff's demands and to declaration that the proceedings at the stockholders' meeting of June 3, 1968, the purported resolution and plan of organization of the feed business and its charter and bylaws are unfair, illegal and inequitable as to the defendants.

The enumeration of errors in each case complains, in substance, that the trial court erred (1) in granting the plaintiff's motion for summary judgment; (2) in holding that the merger between the creamery and Atlanta Dairies and the assignment to the plaintiff of the assets of the feed division were in accordance with law; (3) in holding that the patronage allocations of the old creamery were involved and that the equities of the defendants were subject to assignment; (4) in failing to grant the equitable relief sought and not holding that the take-over by the plaintiff of the equities and assets of the feed division of the old creamery was illegal; and (5) in failing to sustain defendants' objections to plaintiff's evidence and admitting such evidence.

■ Under the facts shown by this record, as we view them, the defendants cannot complain of the merger between the old creamery and Atlanta Dairies or of the assignment to the plaintiff of the equities and assets of the feed division of the creamery.

The rule is that "where stockholders in a corporation participate in the performance of an act, or acquiesce in and ratify the same, they are estopped to complain thereof in equity." *Chalverus v. Wilson Mfg. Co.*, 212 Ga. 612 (4) (94 SE2d 736) (one Justice not participating), citing *Alexander v. Searcy*, 81 Ga. 536, 545 (8 SE 630, 12 ASR 337); *Mathews v. Fort Valley Cotton Mills*, 179 Ga. 580, 587 (176 SE 505).

Howard urges that although he voted in favor of the merger, he had no prior notice that immediately following the adoption of it he would be called upon to vote also on a resolution for the organization of the feed division of the creamery into a separate corporation, a plan of organization therefor, and direc-

tors for the new corporation; that he protested consideration of these matters but was ignored; and that he has never done anything to ratify or approve such actions.

However, incorporation of the plaintiff and assignment to it of the equities and assets of the feed division of the creamery were part and parcel of the merger. The agreement of merger excluded from the merger the assets and liabilities of the feed division and expressly provided that the feed division "will, prior to the effective date of the merger, be organized as a separate and independent Agricultural and Marketing Association under the Act, to be wholly owned by the former members of Eatonton Creamery and patrons of the feed division." When the defendants voted for the merger, they agreed to all of the terms of the merger agreement, and will not now be heard to complain because the plaintiff was then and there organized and the feed division assets transferred to it.

(a) This ruling is controlled adversely as to the defendants' contentions that the assets of the feed division were held in trust by the creamery and hence were not subject to assignment.

Among the assets of the feed division of the creamery which were assigned to the plaintiff were the accounts owed by the defendants, which the plaintiff now seeks to collect, and patronage allocations or "equities" credited to the defendants for purchases made by them, which the defendants contend should be allowed as a setoff against their accounts payable and any excess be paid to them.

Such position of the defendants is not maintainable.

Redemption of patronage allocations is a matter within the discretion of the directors of the co-operative. It is well established that "equity credits allocated to a patron on the books of a co-operative do not reflect an indebtedness which is presently due and payable by the co-operative to such patron. Such equity credits represent patronage dividends which the board of directors of a co-operative, acting under statutory authority so to do, has elected to allocate to its patrons, not in cash or other medium of payment which would immediately take such funds out of the working capital of the co-operative, but in such manner as to provide or retain capital for the co-operative

and at the same time reflect the ownership interest of the patron in such retained capital. Equity credits are not an indebtedness of a co-operative which is presently due and payable to the members, but represent an interest which will be paid to them at some unspecified later date to be determined by the board of directors. Therefore, equity credits cannot be used as a setoff against a member's present indebtedness to the association." 18 AmJur2d 275, Co-operative Associations, § 15.

Here, the evidence is uncontradicted that no determination has been made by the directors of the plaintiff to redeem the revolving fund certificates which represent the defendants' patronage allocations or equities, and therefore they are not entitled to set off such equities against their accounts payable or payment over to them of any excess amount of such equities.

(a) This ruling is controlling adversely to the defendants on their contentions that they are entitled to an injunction against the plaintiff borrowing any funds or expending any amounts for expansion or improvement until it has accounted for and paid all equities due.

■ Defendants' enumeration which complains of the trial court's failure to sustain their objections to the plaintiff's evidence does not require reversal.

We deal first with the affidavits of Griffith. The documents and corporate records attached to his affidavits were sufficiently verified and authenticated. In his affidavits Griffith stated that he was "the duly elected and acting Secretary" of the creamery at the time of the June 3, 1968, stockholders' meeting and identified each of the attachments as being a copy of the particular record or document. Griffith categorically swore that "a copy of the minutes of the meeting of stockholders held on June 3, 1968, is attached . . . and made a part hereof." Appearing at the bottom thereof is a blank line and beneath this his name and title, "Marcus Griffith Secretary." The absence of his signature is of no decisive consequence. In view of his identification it was not necessary that he specifically state that he kept the minutes or that they were correct. Since the attached copy of the minutes of such meeting recites the adoption of the proposals embodied in the attached agreement of merger, resolution and plan for organization, the statements of Griffith objected

to as hearsay and parol evidence attempting to prove corporate action were merely superfluous. It was not necessary that the document assigning the feed business assets to the plaintiff have attached the resolution authorizing such transfer. The resolution approving a plan of organization which provided for the transfer was attached to and identified by the original affidavit of Griffith. The fact that the transfer was executed and delivered subsequent to the merger is immaterial as that was a mere ministerial act to carry out the decision of the stockholders made at the meeting which approved the merger.

The attachments to Griffith's affidavits were copies of the notice of the stockholders' meeting, the minutes of such meeting, the agreement of merger, the resolution adopting a plan for organizing the feed division into a separate corporation, the plan for such organization, the plaintiff's incorporation proceedings, the bylaws of the creamery, and the assignment of the feed division assets to the plaintiff.

The affidavits of McLeroy showing the defendants' accounts with the old creamery were admissible as showing the manner in which the accounts were kept and the amounts thereof, and were relevant to show the basis of the plaintiff's claim.

The affidavits of two officials of Atlanta Dairies, reciting that no former member of the creamery had sought through Atlanta Dairies to recover any assets of the creamery, were relevant on the plaintiff's contention that the defendants must show efforts to obtain redress from that corporation in order to maintain their cross action.

The affidavit of Eugene Resseau as to what transpired at the June 3, 1968, stockholders' meeting was not subject to the objection that several of its paragraphs were attempts to prove corporate action by parol evidence. He stated that he was present at the meeting and could have heard, and therefore was competent to testify as to not having heard any objection voiced in the votes on the merger agreement and the resolution as to a plan for organizing the feed division of the creamery. Statements that might be construed as attempting to prove corporate action, such as that the merger agreement and organization plan were unanimously adopted and that he was elected a director of the new corporation, were harmless since these facts appear

in the minutes of the meeting, hereinbefore ruled properly in evidence. Likewise, attachment of uncertified copies, which this affiant had no authority to certify, of the resolution and the plan for organizing the feed division, was harmless since copies of these documents were properly in evidence as attachments to the affidavit of Griffith, secretary of the creamery. Statements as to two of the defendants continuing to buy feed after the merger were not only immaterial and irrelevant as contended by the defendants, but were also harmless. Paragraph 8, which stated that in May 1969 the directors of the plaintiff resolved to redeem certificates for the years 1954 through 1958, should have been stricken as an attempt to prove corporate action by parol evidence, but we can see no harm to the defendants from this evidence.

Finally, defendants objected to "the copy labeled 'Resolution'" attached to the affidavits of Eugene Resseau, Griffith, and T. A. Marshall, on the grounds such document purports to be a resolution without containing the name of any corporation, any stockholder body, or any board of directors; does not show who "authored" or authorized it; has no authentication, certification or other evidence of validity; and is not signed or dated. Even if this document was improperly attached to some of the affidavits, such was harmless as it was properly in evidence as an attachment to Griffith's affidavit since, as stated above, he as secretary of the creamery at the time of the meeting, sufficiently identified and authenticated this document.

■ In view of the above rulings, the pleadings, answers to interrogatories and affidavits show that there is no genuine issue as to any material fact and that the plaintiff is entitled to a judgment as a matter of law against each of the defendants. Therefore, grant of its motions for summary judgment was proper.

*Judgments affirmed. All the Justices concur.*