George **REMILLONG**, individually and on behalf of Missouri Valley Meat Company, a North Dakota corporation, Plaintiff and Appellant,

v.

John **SCHNEIDER** and Caroline Schneider, Defendants and Respondents.

Civ. No. 8668.

Supreme Court of North Dakota.

March 30, 1971.

Conmy, Conmy, Rosenberg & Lucas, Bismarck, for plaintiff and appellant.

C. J. Schauss, Mandan, for defendants and respondents.

PAULSON, Judge.

This is an appeal by George Remillong, individually and on behalf of Missouri Valley Meat Company, a North Dakota corporation, from a judgment of dismissal entered against George Remillong and the Missouri Valley Meat Company on January 29, 1970. In June of 1952, the Missouri Valley Meat Company was incorporated and organized under the laws of the State of North Dakota. The original incorporators were George Remillong, George Schuch, and John P. Schneider. Initially, each of the shareholders was issued 100 shares of stock. Thereafter, in December of 1952, 50 shares of stock were issued to Harry Semerad; and, in February of 1953, another 50 shares of stock were issued to Mr. Semerad. In May of 1957, George Schuch sold his interest in the corporation, the stock being divided equally between George Remillong, John P. Schneider, and Harry Semerad. At that time, stock certificates representing 100 shares each were issued by the corporation to George Remillong and Matilda Remillong, John P. Schneider and Caroline E. Schneider, and Harry Semerad. On December 1, 1966, Harry Semerad sold and transferred his interest in the Missouri Valley Meat Company by assignment of his shares to John P. Schneider and Caroline E. Schneider. At various times prior to 1966, retained earnings of the corporation were distributed to Harry Semerad, John P. Schneider, and George Remillong, based upon the number of shares of stock held by each. Thereafter the retained earnings were distributed on the basis of one-third of the earnings of the corporation to George Remillong and two-thirds of the earnings to John Schneider. The by-laws of the Missouri Valley Meat Company since the time of its incorporation have contained the following Article:

"ARTICLE VII. It is hereby expressly provided that no person shall be eligible to be a stockholder or officer of this corporation, except the following persons, to-wit: The original stockholders, their heirs or persons designated by the board of directors. It is also made a part of the contract of subscription to stock of this corporation, or the purchase of stock by each subscriber or purchaser, that, in order to carry out the provisions of this section, every shareholder or stockholder, before selling such stock belonging to him shall offer to sell the same to the corporation at the fair book value of such stock at the time such offer is made, and in case of disagreement as to what such book value is at such time such matter in dispute shall be arbitrated. Any attempted sale of such stock to a person or persons ineligible to own stock in this corporation shall be void. And the corporation hereby reserves the right to purchase at the book value any share or shares of stock which may by any means or method become the property of persons, corporations or associations ineligible to be stockholders in this corpo-

ration. The provisions of this section shall be printed upon the face of, and be a part of each and every certificate of stock issued by this corporation."

At all times relevant to this lawsuit, John Schneider, as secretary-treasurer and as the general manager of the Missouri Valley Meat Company, was principally responsible for the management of the corporation; George Remillong was president; and Harry Semerad was vice president prior to the sale of his stock to John Schneider. Notwithstanding the fact that as president of the Missouri Valley Meat Company Mr. Remillong had access to all corporate records, he asserts that at the time of the trial, January 23, 1970, he had no knowledge concerning the corporate books, receipts, and records which were maintained by Mr. Schneider, and Mr. Remillong stated that he believes that some of the company's records may have been lost in a robbery in 1956. Mr. Remillong also asserted that no meetings of the corporation were held, either on a formal or an informal basis. He further stated that he did not know that Mr. Semerad had sold his stock to Mr. Schneider until the fall of 1969, and that Mr. Schneider never notified him of Schneider's claim to ownership of two-thirds of the company's stock. Mr. Remillong further indicated that it was not until the fall of 1969 that he first acquired knowledge of the Semerad stock sale to Schneider. Mr. Remillong also testified that he did not examine any of the company's books because he had relied upon Mr. Schneider to maintain the books and records properly; and he also stated that he was not aware that Mr. Schneider was drawing two-thirds of the corporation's retained earnings until a partial audit made late in 1969 revealed the changed allocation of the retained earnings of the corporation. Mr. Remillong then instituted an action in which he asserted that John Schneider was holding the Semerad stock interest in trust for the Missouri Valley Meat Company, and he asked that Mr. Schneider be required to convey the Semerad stock in the corporation at a price equal to the book value of the stock at the date of Schneider's acquisition of such stock. Mr. Remillong further asked that the corporation be credited as an offset toward the purchase price with the excess distribution moneys which had been removed from the business by Mr. Schneider through December 31, 1968, in the sum of $7,640.84, and for all such sums withdrawn since that time in a disproportionate amount to the moneys drawn by George Remillong.

The issues of this case are:

1. Did the transfer of stock from Semerad to Schneider violate the bylaws of the corporation?

2. If the bylaws were violated, should the stock transfer be declared a trust in favor of the corporation?

3. Were the retained earnings distributed improperly?

The relevant North Dakota statutes are:

10-19-05, N.D.C.C. *"Right of corporation to acquire and dispose of its own shares.*—A corporation shall have the right to purchase, take, receive or otherwise acquire, hold, own, pledge, transfer or otherwise dispose of its own shares, but purchases of its own shares, whether direct or indirect, shall be made only to the extent of earned surplus available therefor, and, if the articles of incorporation so permit or with the affirmative vote of the holders of at least two-thirds of all shares entitled to vote thereon, to the extent of capital surplus available therefor, and subject to the following additional limitations:

"1. No purchase of its own shares shall be made at a time when the corporation is insolvent or when such purchase would render the corporation insolvent; and"

10-19-43, N.D.C.C. *"Place and notice of directors' meetings.*—Meetings of the board of directors, regular or special, may be held either within or without this state."

"Regular meetings of the board of directors may be held with or without notice as prescribed in the bylaws. Special meetings of the board of directors shall be held upon such notice as is prescribed in the bylaws. Attendance of a director at a meeting shall constitute a waiver of notice of such meeting, except where a director attends a meeting for the express purpose of objecting to the transaction of any business because the meeting is not lawfully called or convened. Neither the business to be transacted at, nor the purpose of, any regular or special meeting of the board of directors need be specified in the notice or waiver of notice of such meeting unless required by the bylaws."

31–10–02, N.D.C.C. *"Facts subject to judicial notice.*—Every court of this state will take judicial notice:

\*　\*　\*　\*　\*　\*

"41. Of the official acts of public officers;

\*　\*　\*."

59–01–05, N.D.C.C. *"Implied trust— Definition.*—An implied trust is one which is created by operation of law."

59–01–06, N.D.C.C. *"Implied trust— How created.*—An implied trust arises in the following cases:

"1. One who wrongfully detains a thing is an implied trustee thereof for the benefit of the owner;

"2. One who gains a thing by fraud, accident, mistake, undue influence, the violation of a trust, or other wrongful act, is, unless he has some other and better right thereto, an implied trustee of the thing gained for the benefit of the person who would otherwise have had it;

"3. Each one to whom property is transferred in violation of a trust holds the same as an implied trustee under such trust, unless he purchased it in good faith and for a valuable consideration;

"4. When a transfer of real property is made to one person and the consideration therefor is paid by or for another, a trust is presumed to result in favor of the person by or for whom such payment is made."

59–01–08, N.D.C.C. *"One assuming relation of personal confidence is trustee.*— Everyone who voluntarily assumes a relation of personal confidence with another is deemed a trustee within the meaning of this chapter not only as to the person who reposes such confidence, but as to all persons of whose affairs he thus acquires information which was given to such person in the like confidence, or over whose affairs he, by such confidence, obtains any control."

 The first issue to be discussed is whether the transfer of stock from Semerad to Schneider was in violation of Article VII of the bylaws of the Missouri Valley Meat Company. The general rule stated in 18 Am.Jur.2d, Corporations § 388, page 898, is as follows:

"Provisions which restrict a stockholder's right to sell or transfer his stock by requiring that he give the corporation or the other stockholders first opportunity to purchase stock which he desires to transfer, whether contained in the charter or articles of incorporation, in its bylaws or in statutes, or in agreements between the corporations and the stockholders or between the stockholders themselves, are regarded with disfavor and are strictly construed. It is said that such restrictions are construed to uphold the widest range of choice permissible under the language used."

Nevertheless, it is quite apparent that a bylaw of a closed corporation restricting the transfer of stock is important to protect the corporation and its stockholders. from its competitors and from other undesirable outside influence. 8 Fletcher Cyc. Corp. (Perm.Ed. 1966 rev. vol.) § 4205. This rule has been followed in the Oklahoma decisions of: Schonwald v. Cassell, 475 P.2d

612 (Okl.1970); Dobry v. Dobry, 262 P.2d 691 (Okl.1953); Guaranty Laundry Co. v. Pulliam, 198 Okl. 667, 181 P.2d 1007, 2 A.L.R.2d 738 (1947). In paragraphs 2 and 3 of the syllabus in Guaranty Laundry Co. v. Pulliam, *supra,* the Oklahoma Supreme Court held:

"2. Generally, it may be said that the purpose of stockholders' agreements restricting the sale of corporate stock is to prevent or discourage sales to outsiders, and that other or further restrictive purposes must be specifically stated.

"3. While stockholders' agreements may so limit sale of corporate stock as to require a stockholder desiring to sell his stock to first submit same for purchase by the corporation or by the remaining stockholders in proportion to the stock owned by each, such an intent should be clearly expressed in the agreement. And where the agreement is as well subject to the construction that stock may be sold by one stockholder to another stockholder as to the construction that such stock must be sold to all other stockholders in proportion to the shares they presently own, then generally the former construction is justified since it offers the wider choice to seller and buyer."

■ After perusing Article VII of the bylaws of the Missouri Valley Meat Company, it is apparent that the sole purpose of Article VII is to protect the corporation and its shareholders from outside influence unless the corporation and the stockholders so approve. It does not appear that the purpose of Article VII of the bylaws was to prohibit an unequal division of stock ownership by the sale of stock by one stockholder to another. To hold that Article VII specifically prohibited the sale of stock by one stockholder to another without approval by the corporation and other stockholders would be contrary to the general rule of law expressed above. Thus

we hold the transfer of stock from Mr. Semerad to Mr. Schneider to be valid.

If, for the sake of argument, we had held that Article VII did apply to the transfer of shares of stock from one stockholder to another, the result would have been the same in the case at bar.

■ In referring to informal meetings by corporate directors, in 19 Am.Jur.2d, Corporations § 1121, page 557, it is stated:

"The general rule that corporate action can be taken only at a meeting of the board of directors has been held inapplicable where the directors themselves are the only stockholders; in such a case, action taken by them informally and without a meeting is corporate action, and a corporate obligation so created is binding on the corporation."

And, in 19 Am.Jur.2d, Corporations § 1122, page 558, it is stated:

"A corporation or its stockholders may, by custom or general consent, waive the requirement of formal meetings of the board of directors."

Missouri Valley Meat Company is an example of a closed corporation in which the directors and the stockholders are one and the same and have been conducting business for a number of years on an informal basis, not recording the minutes of their meetings. In 2 Fletcher Cyc. Corp. (Perm.Ed. 1969 rev. vol.) § 394.1, at page 238, it is stated:

"The doctrine of permitting closed corporations to act informally is recognized as an exception to the general rule that directors must act as a board at duly convened meetings. In fact it is well known that corporations which include only a few stockholders do not often act with as much formality as larger companies. This is especially so where the members of the board, actually and directly, personally conduct the business."

This rule has been adopted by the United States District Court for the District of North Dakota, Southeastern Division, in American Casualty Co. v. Dakota Tractor and Equipment Co., 234 F.Supp. 606, 611 (1964), wherein the court stated:

> "It is not necessary in order to bind a corporation that all acts done by its officers should be specifically authorized by the board of directors and such authorization entered in its books. It is recognized that officers and directors of a closed corporation which is the case here, frequently act informally, but nevertheless have authority to bind the corporation."

 Pursuant to § 31–10–02(41), N.D.C.C., we take judicial notice of the annual reports for domestic corporations filed with the Secretary of State's office for the State of North Dakota for the Missouri Valley Meat Company for the years 1965 and 1966. Columbia Stamping & Mfg. Co. v. Reich, 28 Wis.2d 297, 137 N.W. 2d 45 (1965). The annual report for 1965 reveals that the directors and officers of the Missouri Valley Meat Company were: George J. Remillong, director and the president; Harry Semerad, director and the vice president; and John P. Schneider, director and the secretary-treasurer. The annual report for 1966 reveals that George J. Remillong was a director and the president; John P. Schneider was a director and the secretary-treasurer; and Harry Semerad's name did not appear in the 1966 annual report, either as a director or as an officer of the corporation. This is due to the fact that Mr. Semerad had sold his stock to John Schneider prior to the date that the 1966 report was filed. Thus, Mr. Remillong had at least constructive notice of the stock transfer from Mr. Semerad to Mr. Schneider.

The deposition of Harry Semerad, dated December 11, 1969, and identified as Plaintiff's Exhibit 2, was admitted into evidence by the trial court pursuant to stipulation by both of the parties. In his deposition,

Mr. Semerad testified that on more than one occasion, in the presence of George Remillong and John Schneider and himself, at the official place of business of the Missouri Valley Meat Company, Mr. Semerad offered to sell his interest in the Missouri Valley Meat Company to the corporation or, in the alternative, to the other two stockholders. Mr. Semerad testified that George Remillong did not wish to purchase Mr. Semerad's stock. Mr. Semerad also testified, of his own personal knowledge, that the Missouri Valley Meat Company did not have adequate assets with which to purchase his interest in the corporation during the period of time when Semerad was negotiating for the sale of his stock. Plaintiff's Exhibit 3, admitted into evidence by the trial court, is a retained earnings analysis of the Missouri Valley Meat Company which indicates that, at the time of the Semerad stock transfer, the Missouri Valley Meat Company did not have adequate assets to purchase Mr. Semerad's stock and, in fact, that a loss was reported for the year of 1965; and the reported earnings for the year of 1966 were in an amount far less than required to purchase Mr. Semerad's stock. Furthermore, had the Missouri Valley Meat Company purchased the Semerad shares when the corporation lacked sufficient capital, such action would have been in violation of § 10–19–05 (1), N.D.C.C. Mr. Remillong was present at those company meetings wherein Mr. Semerad discussed his desire to dispose of his stock, and at such times Mr. Remillong voiced no objection to the fact that these meetings were called informally; and thus, pursuant to § 10–19–43, N.D.C.C., Mr. Remillong's attendance at such meetings constituted a waiver of notice of such meetings. A similarly informal meeting was held to be a valid board meeting in Columbia Stamping & Mfg. Co. v. Reich, *supra*. Thus we hold, for the purpose of argument, that had the restrictions in Article VII of the bylaws of the Missouri Valley Meat Company applied to the Semerad stock transfer, Mr. Semerad in effect complied with the requirements of

Article VII of the bylaws of the corporation.

Sections 59–01–05, 59–01–06, and 59–01–08, N.D.C.C., do not apply in the case at bar because the Semerad stock transfer was valid and therefore no trust is in existence in favor either of Mr. Remillong or of the Missouri Valley Meat Company. We further find that there is nothing in Article VII of the bylaws of the Missouri Valley Meat Company which would prohibit a disproportionate shareholding by any one of its stockholders. We hold that the distribution of the corporation's retained earnings was made in proportion to the stock ownership of each stockholder and that there was a proper distribution of such earnings.

For the reasons stated in the opinion, the decision of the district court is affirmed.

STRUTZ, C. J., and ERICKSTAD, TEIGEN and KNUDSON, JJ., concur.