**Mary SCHILL, Plaintiff and Appellee,**

v.

**LANGDON FARMERS UNION OIL COMPANY, Defendant and Appellant.**

Civ. No. 880174.

Supreme Court of North Dakota.

June 27, 1989.

McConn, Fisher, Olson & Daley, Grand Forks, for defendant and appellant; argued by Richard W. Olson.

---

Cameron D. Sillers, Langdon, for plaintiff and appellee.

GIERKE, Justice.

This is an appeal by the defendant, Langdon Farmers Union Oil Company, from the district court judgment granting summary judgment in favor of the plaintiff, Mary Schill. We affirm.

This case involves the patronage credits of a now defunct corporation. Patronage credits are the dividends or credits earned by a patron member of a cooperative for patronizing the cooperative.[1]

S & S Farms was a farm cooperative incorporated on July 11, 1969. S & S Farms encountered economic difficulties and for several years did not pay Mary Schill agreed cash rents for her land. In December 1984, S & S Farms confessed judgment to Mary Schill for $219,567.00.

Langdon Farmers Union Oil Company (hereafter referred to as Langdon Oil) is a cooperative association with whom S & S Farms was a patron member from July 11, 1969, until April 6, 1987, on which date S & S Farms filed for dissolution and assigned all of its assets to its creditors. All of S & S Farms' machinery was assigned to the First Bank of Langdon pursuant to a security agreement. All remaining assets of S & S Farms were assigned to Mary Schill on May 1, 1985, as partial payment for the unsecured judgment against S & S Farms in the amount of $219,567.00.

On December 15, 1984, Dennis Schill, secretary of S & S Farms, sent a letter to Langdon Oil requesting that all of S & S Farms' patronage credits valued at $21,735.00 be assigned to Mary Schill. S & S Farms' request was rejected by the board of directors of Langdon Oil on February 15, 1985.

Langdon Oil has a policy of retirement or redemption of patronage credits upon the death of a natural patron. On April 10, 1987, Mary Schill sent a letter to Langdon Oil informing them that the farm coopera-tive of S & S Farms was legally dissolved and requesting retirement or redemption of S & S Farms' patronage credits. Langdon Oil refused to distribute S & S Farms' patronage credits to Mary Schill.

On June 22, 1987, Mary Schill commenced this lawsuit seeking distribution of the patronage credits of S & S Farms. In the complaint, Mary Schill alleges that she "was one of the shareholders of S & S Farms", was "the sole creditor of S & S Farms", and was "entitled to all of the assets of S & S Farms." Langdon Oil, in its answer to the complaint, denied Mary Schill's allegations and asserted that "the Complaint failed to state a cause of action upon which relief can be granted."

During discovery, Mary Schill disclosed an assignment from S & S Farms, dated May 1, 1985. On January 26, 1988, the board of directors of Langdon Oil, in consultation with its attorney, transferred on its books all of S & S Farms' patronage credits to Mary Schill making the assignment retroactive to May 1, 1985, that being the date of S & S Farms' assignment to Mary Schill. Mary Schill neither joined in nor accepted this transfer but instead maintained that she was entitled to distribution.

On February 2, 1988, Mary Schill filed a motion for summary judgment on the ground that no genuine issue of material fact exists and that she is entitled to judgment as a matter of law. Langdon Oil filed opposing papers, including a brief supported by an affidavit and several attached exhibits, resisting the summary judgment motion on the grounds that all interest in all assets of S & S Farms was assigned to Mary Schill on May 1, 1985, so that, when S & S Farms voluntarily dissolved, there were absolutely no patronage credits to retire because it had no assets. A hearing on the motion for summary judgment was held April 4, 1988. On April 13, 1988, the district court granted summary judgment in favor of Mary Schill. Langdon Oil filed this appeal on May 31, 1988.

---

**1.** Patronage credits are also known as capital credits, stock credits, patronage stock or patron-age dividends.

On appeal, Langdon Oil contends that there was an issue of material fact as to whether the transfer of patronage credits from S & S Farms to Mary Schill was in compliance with its bylaws. Accordingly, Langdon Oil contends that summary judgment was inappropriate and therefore the trial court erred in granting Mary Schill's motion for summary judgment.

Rule 56 of the North Dakota Rules of Civil Procedure provides that summary judgment shall be granted if "there is no genuine issue as to any material fact and that any party is entitled to a judgment as a matter of law."

This Court stated the criteria necessary to determine the propriety of granting summary judgment in *Stensrud v. Mayville State College*, 368 N.W.2d 519, 521 (N.D.1985), as follows:

"Summary judgment is appropriate to promptly and expeditiously dispose of controversies without trial when, after viewing the evidence in the light most favorable to the party against whom summary judgment is sought and giving her the benefit of all favorable inferences, only a question of law is involved or there is no genuine dispute over either the material facts or inferences to be found from undisputed facts. [Citations omitted]. Even when a factual dispute exists summary judgment is proper if the law is such that the resolution of the factual dispute will not change the result."

In the instant case, the trial court, in its order for summary judgment, made what it labeled findings of fact that "the transaction of January 26, 1988 was without the proper compliance" with Langdon Oil's bylaws on transfers of stock. Therefore the trial court determined "that the document was invalid and without effect", so that "the capital credits actually belong[ed] to S & S Farms." The trial court further determined that the voluntary dissolution of S & S Farms on April 6, 1987, "was the death of that cooperative" and concluded that Langdon Oil must distribute the patronage credits of S & S Farms pursuant to its "policy of paying out capital credits upon the death of the patron".

This Court has stated that labels placed on findings of fact or conclusions of law by the trial court are not conclusive but, rather, whether it is a finding of fact or a conclusion of law is to be determined by the reviewing court. *Martinson Bros. v. Hjellum*, 359 N.W.2d 865 (N.D.1985); *Oakes Farming Ass'n v. Martinson*, 318 N.W.2d 897 (N.D.1982).

The determinations of the trial court that the transaction of January 26, 1988, transferring S & S Farms' capital credits to Mary Schill was not in compliance with Langdon Oil's bylaws and that the dissolution of S & S Farms was the death of the cooperative which would qualify for retirement of capital credits were conclusions of law and not findings of fact. Accordingly, we do not believe that there was a genuine dispute as to any material facts and that any determinations made by the trial court concerned only questions of law.

Unlike findings of fact, questions of law are fully reviewable on appeal. *Wilson v. Wilson*, 364 N.W.2d 113 (N.D.1985); *Norden Laboratories, Inc. v. Rotenberger*, 358 N.W.2d 518 (N.D.1984); *Nygaard v. Robinson*, 341 N.W.2d 349 (N.D.1983). Accordingly, we must review whether or not the trial court erred in its conclusions of law.

Initially, we must determine whether or not the transaction of January 26, 1988, transferring the capital credits of S & S Farms to Mary Schill was without proper compliance of Langdon Oil's bylaws.

■ Langdon Oil's articles of incorporation provide in part as follows:

"ARTICLE III. CAPITAL STOCK

\* \* \* \* \* \*

"Section 7. Transfers of stock shall only be made with the approval of the Board of Directors and shall only be made upon the books of the association by the stockholder in person or pursuant to a power-of-attorney duly executed and acknowledged and filed with the Secretary of the association, and upon surrender of the certificate for such shares and

no transfer shall be made unless and until any and all indebtedness owing to the association by the stockholder has been paid in full. The association shall have a first lien on the capital stock of the association for any debt due it by the holder thereof...."

Thus, a transfer of stock by Langdon Oil "shall only be made upon the books of the association by the stockholder in person or pursuant to a power-of-attorney duly executed and acknowledged and filed with the Secretary of the association. ..."

As previously stated, S & S Farms sent a letter to Langdon Oil on December 15, 1984, requesting that all of its patronage stock be assigned to Mary Schill. However, Langdon Oil rejected S & S Farms' request on February 15, 1985. Thereafter, on January 26, 1988, Langdon Oil unilaterally transferred the patronage stocks of S & S Farms to Mary Schill.

Because the transfer of patronage credits was made upon the books without the stockholder in person or without a duly executed power-of-attorney, we agree with the trial court's conclusion that Langdon Oil's bylaws were not followed with regard to the transfer of stock.

Next, we must determine whether or not S & S Farms, a formerly dissolved corporate patron, should be treated for purposes of distribution of its patronage credits no differently than an individual patron who has died.

As previously stated, Langdon Oil maintains a policy of retiring or paying out patronage credits upon the death of an individual patron. While, in the instant case, Langdon Oil does not contest Mary Schill's ownership of the patronage credits of S & S Farms, Langdon Oil is not willing to treat the dissolution of S & S Farms, a corporate patron, the same as the death of an individual patron which would qualify for retirement of patronage credits.

The general rule discussing the effect of dissolution of a corporation is stated in

Section 8113 of 16A Fletcher, Cyclopedia Corporations (Perm. ed.) as follows:

"According to the principles of the common law, a corporation which has been legally dissolved is dead. It no longer enjoys an existence for any purpose. The necessary effect of such death is not different from the death of a natural person. This is true whether the corporation is dissolved voluntarily or involuntarily, and the effect of the dissolution is the same whether it results ipso facto from some act or omission of the corporation or through judicial decree. * * * Since the dissolved corporation ceases to exist, it is without any corporate powers either de jure or de facto, and has none of the attributes of a legal corporation. In other words, in the absence of statutory provisions to the contrary, the effect of dissolution is to put an end to the corporation's existence for all purposes whatsoever." [Footnotes omitted].

Thus, at common law, dissolution of a corporation terminates its existence and renders it civilly dead. 16A Fletcher, Cyclopedia Corporations (Perm. ed.) § 8113; *see also In re Great Plains Royalty Corporation,* 471 F.2d 1261, 1264–1265 (8th Cir. 1973) (corporation formally dissolved becomes civilly dead); 19 Am.Jur.2d, *Corporations* § 2882 (effect of dissolution of a corporation).

Under the North Dakota Business Corporation Act,[2] upon the issuance of the certificate of dissolution by the secretary of state, the existence of the corporation ceases except for the purpose of suits or for the purpose of further winding up its affairs. *See* N.D.C.C. §§ 10–19.1–111 (claims in dissolution), 10–19.1–113 (articles of dissolution and certificate of dissolution), and 10–19.1–124 (after dissolution claims barred—exceptions).

■ For the purpose of retiring patronage credits, we believe that, at least in the instant case where there is an absence of a bylaw provision to the contrary, a corpora-

---

**2.** The provisions of the North Dakota Business Corporation Act are found at Chapter 10–19.1 of the North Dakota Century Code.

tion which has legally dissolved is entitled to the same treatment as that given to an individual patron who dies. Accordingly, we believe the trial court correctly determined that the formal dissolution of S & S Farms was the death of that corporation which qualifies for the retirement of its patronage credits.

For the reasons stated in this opinion, we affirm the trial court's judgment that Mary Schill was entitled to the distribution of S & S Farms' patronage credits.

ERICKSTAD, C.J., and VANDE WALLE, J., concur.

MESCHKE, Justice, dissenting.

I respectfully dissent. The majority opinion consciously confuses the distinction between findings of fact and conclusions of law.

Mary Schill sought summary judgment, showing that S & S Farms had voluntarily dissolved and that the Oil Company "maintains a policy of immediate redemption of the capital credits upon the death of a natural patron." Citing *In Re Great Plains Royalty Corporation*, 471 F.2d 1261 (8th Cir.1973), Mary Schill argued that the Oil Company's "stock retirement policy illegally discriminate[d] against [her] and violate[d] both statute as well as the contractual relationship as determined by the [Oil Company's] By-laws."

The Oil Company resisted summary judgment on grounds that "all interest ... of all assets of S & S Farms was assigned [to] Mary Schill" on May 1, 1985 so that, when it voluntarily dissolved, S & S Farms "had absolutely no patronage stock credits to retire because they had no assets." The Oil Company attached affidavits showing its articles, its bylaws, and its relevant minutes, as well as the assignment to Mary Schill. The minutes showed that its board had approved "transfer of S & S Farms stock credits/capital credits ... effective May 1, 1985, with all stock transferred to be held in the name of Mary Schill and retired upon her death pursuant to Board Policy and availability of funds...." The minutes also said that "such transfer is approved because of considerations relat-

ing to her status as a stockholder of S & S Farms and the Farmers Union Oil Company...."

The Oil Company resisted Schill's suggestion that its stock retirement policy "illegally discriminate[d]" against her, relying on *Richardson v. South Kentucky Rural Electric Cooperative Corporation*, 566 S.W.2d 779 (Ky.App.1978) to show that a cooperative can justifiably distinguish between the death of a natural person and the voluntary dissolution of a corporation for early retirement of patronage stock credits.

In beginning its analysis, the trial court observed that it had to first determine "who, in fact, own[ed] the patronage capital ... dividends." The trial court made findings of fact that "the board unilaterally transferred the capital credits" in January 1988 "without the proper compliance" with its bylaws on transfers of stock although lack of compliance not conceded by the Oil Company. The trial court went on to find that the "transaction of January [1988] was invalid and without effect" so that the "capital credits actually belong[ed] to S & S Farms." The trial court also found that the voluntary dissolution of S & S Farms "was the death of that cooperative" and, citing *In re Great Plains, supra*, ruled that the Oil Company must pay out the stock credits pursuant to its "policy of paying out capital credits upon the death of the patron." The judgment ordered "that the capital credits be paid to S & S Farms and *assignee* Mary Schill ... within 60 days of the date of this Judgment unless ... [the] Oil Company[ ] sets forth ... by motion, reason why payment of those amounts would, in fact, financially harm or cause financial difficulty that would be irreparable...." (My emphasis).

On appeal, the Oil Company argued mainly that there was an issue of material fact about whether "transfer of patronage stock from S & S Farms to Mary Schill was in compliance with" its bylaws, thus making summary judgment inappropriate. The Oil Company argued that the transfer cannot be found invalid as a matter of law,

that Mary Schill was the owner of the patronage stock through her assignment, and that she "now improperly seeks an early retirement of these stocks" when they "should properly be retired upon application by her estate."

Mary Schill responded that the Oil Company's "argument that it somehow transferred the capital credits of S & S Farms to Mary Schill is without factual or legal basis." She argued that the "assignment was ineffective" because the Oil Company had no authority from her to make the transfer on its records. She also argued that the estate of a voluntarily dissolved corporation "is entitled to the same treatment as that given to the estate of an individual patron who dies."

State law authorizes a cooperative to adopt articles and bylaws with provisions governing distribution and redemption of patronage credits and stock. NDCC 10–15–11, 10–15–20, and 10–15–33(4) and (5). Articles of incorporation and the bylaws of a cooperative are a contract between a cooperative and a patron. *Evanenko v. Farmers Union Elevator*, 191 N.W.2d 258 (N.D.1971). Thus, the courts must look to relevant provisions of a cooperative's articles and bylaws.

The Oil Company's articles of incorporation said:

"All savings ... shall be distributed to patrons annually or oftener on the basis of patronage, taking into consideration the source from which the income accrues and shall be applied toward the purchase of ... stock,

. . . . .

"All savings (net profits) of the association, ... shall belong to the patrons of the association, and any amounts placed in reserves ... shall be deemed to be capital contributions by such patrons, so that the book value of the capital stock of the association shall never exceed the par value thereof.

"Transfers of stock shall only be made with the approval of the Board of Directors and shall only be made upon the books of the association by the stockholder in person or pursuant to a power-of-at-torney duly executed and acknowledged and filed with the Secretary of the association, and upon surrender of the certificate for such shares...."

And, the Oil Company's bylaws said:

"*Distribution.* All of the annual savings ... shall be distributed annually to the patrons of the association on the basis of their respective patronage. There shall be no discrimination between patrons, but due regard shall be given to the source from which such savings accrues, and separate allocations and distributions shall be made for the marketing and purchasing operations as separate divisions of this association. Patronage refunds shall constitute a contribution to the capital of the association and shall be distributed in the capital stock of the association, ... at its par value, or by credits where the patronage refund does not equal the par value of a share of stock.

"*Retirement of Common Stock.* The board of directors may retire at par value the common stock of any stockholder who knowingly and intentionally violates any provisions of the Articles of Incorporation or By-laws of this association, or who ceases to be a patron of this association for one year, or who moves from the territory served by this association. In addition the board of directors may, in their discretion and in accordance with law, retire the common stock of this association at par value at any time, but in so doing they shall either:

"(a) Retire the same proportion of the total common stock held by each stockholder, or

"(b) Retire all or the same proportion of all of the capital paid in by each patron in any year or years represented by common stock."

A stockholder's rights to early retirement of stock credits in the Oil Company are controlled by this last bylaw on retirement.

A "through-the-looking-glass," surrealistic quality permeated the appellate arguments. The Oil Company, after having once refused to record an assignment of its stock credits from S & S Farms to Mary

Schill, argued that another assignment was effective even though the assignee had not submitted it to change record ownership. The assignee, Mary Schill, insisted that the assignment was not effective even though, as the judgment reflected, she relied on it for her exclusive claim to the stock credits.

If, by virtue of her assignment, Mary Schill owned the stock credits for several years before S & S Farms voluntarily dissolved, then the Oil Company was right. Upon voluntary dissolution, S & S Farms owned nothing. Before a cooperative can voluntarily dissolve, all of its assets must have been distributed to those entitled and all liquidation activities completed. NDCC 10–15–45. Voluntary dissolution of S & S Farms was irrelevant if there was an effective assignment, whether or not the assignment was shown on the records of the Oil Company.

How and when the transfer of ownership was recorded by the Oil Company was not material. *See Golden v. Oahe Enterprises, Inc.*, 90 S.D. 263, 240 N.W.2d 102, 108 (1976) ("... [A] certificate is mere evidence of ownership.... Issuance and delivery of the stock certificate are not essential to ownership." *See also, Calvert v. Bongards Creameries*, 835 F.2d 1222 (8th Cir. 1987) (A bankruptcy trustee's rights are limited to those the debtor had under state law, so trustee cannot transfer patron certificates without approval of cooperative's board of directors.). Bylaws invalidating a transfer of stock until the transfer is entered in the corporate record do not affect ownership rights, but rather are intended for the protection of the corporation. *See Fletcher Cyc. Corp.* §§ 4205 and 5496 (1982 ed.). *See also Remillong v. Schneider*, 185 N.W.2d 493, 497 (N.D.1971). Under its contract with its patrons, transfer and ownership of stock in the Oil Company was exclusively controlled by its board of directors. That provision in the articles was binding on any assignee of the stock credits. At least, these factors show material issues of fact existed about the intent of the parties as to ownership of the stock credits.

Under the bylaws, the board of directors of the Oil Company "may retire" the stock of "any stockholder ... who ceases to be a patron ... for one year." As we said in *Evanenko v. Farmers Union Elevator, supra*, addressing similar bylaws, it is for "the board of directors, in the exercise of its sound discretion, [to] determine[ ] that such payments can be made in cash without causing undue financial hardship to the cooperative." 191 N.W.2d at 261. As *Evanenko* recognized, the business and affairs of a cooperative are managed by its board of directors. NDCC 10–15–25(1).

Only if the contract between a cooperative and its stockholder, embodied in its articles and bylaws, mandates retirement and has been broken, can a stockholder force a cooperative to retire her stock. Whether a cooperative may adopt policies for redemption of its stock credits upon the death of a natural person without providing similar procedures for events subject to manipulation, like the voluntary dissolution of a corporation, is essentially a matter of interpreting the contract between the cooperative and the stockholder. *See Lillethun v. Tri–County Electric Coop., Inc.*, 152 N.W.2d 147 (N.D.1967) (cooperative board of directors can make reasonable classifications). While "there shall be no discrimination between patrons" for allocations of patronage savings, no similar limitation is made for retirements in the bylaws. The bylaws neither require nor prohibit retirements upon death of a natural person or upon dissolution of an artificial entity. An issue of breach of contract, not clearly delineated by the terms of the contract, should await resolution in a proper case where the issue is factually developed, fairly argued, and fully submitted.

"When the trial court deems it necessary to make inferences from surrounding circumstances, resolve ambiguities in a written contract, and to make findings of fact, the entry of a summary judgment is generally inappropriate." *Brown v. North Dakota State University*, 372 N.W.2d 879, 883 (N.D.1985). Since there were factual issues about the contractual obligation to retire the stock credits, as well as about ownership of them, there were genuine is-

sues about material facts precluding judgment as a matter of law. NDRCivP 56(c). I believe that the summary judgment should be reversed.

Therefore, I respectfully dissent.

LEVINE, J., concurs.