**MITCHELLVILLE COOPERATIVE, Appellee,**

v.

**INDIAN CREEK CORPORATION, Appellant.**

No. 90–536.

Court of Appeals of Iowa.

Feb. 26, 1991.

Curt N. Daniels, Mingo, for appellant.

Mark C. Feldman of Beving, Swanson & Forrest, P.C. and Douglas A. Haag of Patterson, Lorentzen, Duffield, Timmons, Irish, Becker & Ordway, Des Moines, for appellee.

Heard by DONIELSON, P.J., and HAYDEN and HABHAB, JJ.

DONIELSON, Presiding Judge.

Indian Creek Corporation[1] is a family farm corporation engaged in raising hogs. The president and principal shareholder in Indian Creek is Curt Daniels, who has degrees in law and veterinary medicine. Indian Creek is a member of the Mitchellville Cooperative (Co-op) and has shares of common and class B preferred stock which amount to $84,558.27. Indian Creek also purchases hog feed from the Co-op on an open account.

The Co-op brought this suit claiming that $114,492.21 was due from Indian Creek on its open account. Indian Creek filed an affirmative defense and counterclaim based on the doctrine of setoff, claiming that the debt should be set off against the value of its stock. The district court determined that the Co-op's rules did not provide for such a setoff and that Indian Creek failed to prove an equitable right to such a remedy. The court entered judgment against Indian Creek for $114,492.21, plus interest. Indian Creek now appeals.

Indian Creek contends that the Co-op breached its fiduciary duty to Indian Creek as a shareholder by failing to disclose material facts concerning a conflict of interest. During the same time that the Co-op sold hog feed to Indian Creek it also sold hog feed to Land-O-Lakes Cooperative, which is an agricultural cooperative in competition with Indian Creek. Indian Creek also believes that the Co-op should have informed it that a setoff would not be available.

Indian Creek argues that the Co-op had a fiduciary duty to provide an equitable program to redeem deferred dividends held by the Co-op. Indian Creek was required to pay income taxes on these deferred dividends, but then was not able to realize the income.

Indian Creek contends that the Co-op breached its fiduciary duty by engaging in unfair competition when it did not seek Indian Creek's consent to its business arrangement with Land-O-Lakes. Indian Creek states that Land-O-Lakes profited from its purchases from the Co-op, and that Land-O-Lakes then used the income to compete with Indian Creek.

Finally, Indian Creek contends that as a result of the Co-op's breach of fiduciary duty, its claim for setoff was a mature tort claim, and the court erred in not granting it the equitable remedy of setoff.

The crux of the present case is the question of the right of a cooperative member to setoff its cooperative stock against a mature debt owed to the coop. The Iowa Supreme Court has not previously had the occasion to address this issue, thus it is incumbent upon us to determine the purpose of the cooperative under Iowa law, and under what conditions an individual or corporation may redeem preferred stock and offset this amount against a current debt owed to the cooperative.

Iowa Code chapter 499 (1989) sets forth the rules upon which cooperatives may operate in Iowa. Section 499.2 defines an agricultural cooperative as an association "formed to produce, grade, blend, preserve, process, store, warehouse, market, sell, or handle an agricultural product * * *." Pursuant to this section, a cooperative may also "purchase, produce, sell, or supply machinery, petroleum products, equipment, fertilizer, supplies, business services, or educational service * * *." Sections 499.7 and 499.36 provide that the cooperative may conduct business and carry on operations under the management of a board of directors. The cooperative may limit its dealings to members only, and must not conduct more than one half the value of business done with nonmembers. Iowa Code § 499.3.

Concerning the distribution of earnings, section 499.30 provides that after certain deductions, the annual net earnings of the cooperative are to be allocated to the account of each member in proportion to the business done with the coop. A portion of this dividend must be paid to the members

---

1. Indian Creek Corporation attempts on numerous occasions to argue the rights of some entity named AgriVest Partnership. We have ignored all references and arguments concerning this entity inasmuch as AgriVest was not, is not, and cannot now become a party to this action.

in cash, the remainder to be credited to the members in a revolving fund referred to as deferred patronage dividends, or preferred stock. Iowa Code § 499.33. In the payment of these dividends, section 499.33 provides that prior to other payments of deferred patronage stock, priority of payment or redemption of patronage stock is given to deceased natural persons.

Structured on the language of section 499.33, Article VII, section 1(e) of the Mitchellville Cooperative provides for a method in which its members' preferred stock is to be redeemed. The Articles state that priority is given first to the families of deceased members, and then to retired members over the age of 65, the remaining funds applied to all other members. Article VIII, section 2 provides:

> 2. The deferred patronage dividends for any year shall have priority over those for any subsequent year, except the directors may, at their discretion, pay deferred patronage dividends of deceased members and members who become ineligible without reference to the order of priority herein prescribed.

Against this backdrop, Indian Creek first contends that the failure of the Co-op to adopt a separate "death" redemption policy for corporations constituted a breach of its fiduciary duty to Indian Creek. As a consequence, Indian Creek seeks to offset its preferred stock against the sum due the Co-op on its open account. Indian Creek's theory is based upon the claim that a corporation is the same as a natural person for purposes of setoff or redemption as provided for in chapter 499. Indian Creek points out that under the Iowa statutes a corporation is discriminated against because it cannot die as a natural person, and such a result is unfair.

In support of its proposition, Indian Creek cites to *In re Great Plains Royalty Corp.*, 471 F.2d 1261 (8th Cir.1973). In *Great Plains*, two cooperatives refused to refund patronage capital credits to the estate of a defunct, bankrupt corporation. 471 F.2d at 1262–63. Under the bylaws of the cooperatives, all amounts received from patronage in excess of operating costs and expenses were to be credited to the member-patron's account as though these amounts had been refunded to the patron in cash and then returned to the cooperative for inclusion in its capital account. *Id.* at 1263. The bylaws additionally provided that the cooperative board of directors may retire patronage credits on a first-in, first-out basis. *Id.* The bylaws permitted an exception to this first-in, first-out rule by allowing early retirement of a patron's credit upon his death, where the board of directors acting under policies of general application approved. *Id.* The Eighth Circuit held that the bylaws provisions providing for the early retirement of capital credits upon the death of any patron must be construed to apply to the claims of the bankrupt corporation. *Id.* at 1264. The court based its holding on its interpretation of North Dakota Cent. Code section 10–15–33(4)(b), which provided that discrimination in distributions of net proceeds is prohibited, except as between members and nonmembers in specific situations. *Id.*

In the case of *Schill v. Langdon Farmers Union Oil Co.*, 442 N.W.2d 408 (N.D. 1989), the North Dakota Supreme Court was faced with the question of whether for purposes of retiring patronage credits a legally dissolved corporation was to be afforded the same treatment as a deceased natural person. The *Schill* court concluded that in the absence of a bylaw provision to the contrary, the corporation would be afforded the same treatment as a natural person. In so holding, the court cited to 16A Fletcher, Cyclopedia Corporations section 8113, noting that the dissolution of a corporation for purposes of retirement of patronage credits "is not different from the death of a natural person." 442 N.W.2d at 411.

Not all states which have considered questions similar to the facts of the present case have followed the line enunciated in *Great Plains* and *Schill*. In *Richardson v. South Ky. R. Elec. Co–Op.*, 566 S.W.2d 779, 784 (Ky.Ct.App.1978), the court held that a cooperative was not required to equate the dissolution or bankruptcy of a corporation with the death of a natural

person. The court opined that there were several valid reasons for making a distinction between a corporation and a natural individual:

First, the needs of the surviving members of the family of a farmer or other head of household are usually different from the needs of former shareholders of a dissolved corporation. Second, the liquidation of the corporation is not delayed. The capital credit claim of Richardson Flooring can be assigned to its shareholders on a pro rata basis as a part of the liquidation. Third, and most important, there is no reason to prefer the shareholders of Richardson Flooring over other customers of South Kentucky RECC having capital credits for the years through 1971. If an individual customer had moved out of the cooperative's service area or had gone out of business, he would have as much right to demand retirement of his capital credits as would the former shareholders of Richardson Flooring.

566 S.W.2d at 784.

Upon our examination of the foregoing authority, we conclude the holdings in *Great Plains* and *Schill* are inapposite to the facts of the present case. In both *Great Plains* and *Schill,* the statutes interpreted by the court explicitly stated that there was to be no discrimination between a corporation and a natural person. Those Iowa sections governing the cooperative's patronage stock do not prohibit a cooperative, through bylaws duly passed by the board of directors, from placing natural persons in a higher priority than a corporation when making payments from the revolving fund. Section 499.33 expressly discriminates in favor of deceased natural persons.

Additionally, the corporations in both *Great Plains* and *Schill* were bankrupt or dissolved, whereas Indian Creek is a viable corporation. We find the *Richardson* court's rationale for distinguishing between a corporation and a natural person persuasive. We hold that under Iowa law a cooperative is not prohibited in prioritizing the payment of patronage credits among deceased natural members, retirees, and corporations. *See* § 499.33. In the absence of a statute or bylaw to the contrary, corporations are not considered natural persons within the meaning of chapter 499.

Indian Creek, however, also contends the Co-op should have offset Indian Creek's open account against its preferred stock. Our courts have not previously been called upon to address the right of a cooperative member to setoff its cooperative stock against a mature debt owed the Co-op. However, a number of other states have considered this question. In the case of *Atchison Cty. Farmers Union v. Turnbull,* 241 Kan. 357, 736 P.2d 917 (1987), the Co-op had filed suit to collect on a members unpaid open account debt of $11,673.04. The cooperative member counterclaimed, proposing that his $17,732.98 in patronage dividends be set off against the balance due. *Id.,* 241 Kan. at 358, 736 P.2d at 919. At trial, the general manager of the cooperative testified that at the time the member applied for payment of his equity account, there were no bylaw provisions or policies allowing liquidation, although the bylaws allowed the payment of equities upon the death or retirement of a member. *Id.*

In considering the question of setoff, the *Turnbull* court noted that "[a]n equitable setoff will be allowed when the party seeking it shows some equitable ground therefore, and it is necessary to promote justice, to avoid or prevent wrong or irremediable injustice, or to give effect to a clear equity of the party seeking it." 241 Kan. at 362, 736 P.2d at 922. In holding that the cooperative member was not entitled to have his patronage equity applied to pay off the balance of his open account, the court held that "there is no logical ground upon which a member should be permitted to withdraw his interest at the expense of disturbing the financial condition or life of the association." *Id.*

The Georgia Supreme Court was faced with a similar question in *Howard v. Eatonton Co-Operative Feed Co.,* 226 Ga. 788, 177 S.E.2d 658 (1970). In holding that

the cooperative member had no right to setoff, the court held:

> Redemption of patronage allocations is a matter within the discretion of the directors of the cooperative. It is well established that "equity credits allocated to a patron on the books of a cooperative do not reflect an indebtedness which is presently due and payable by the cooperative to such patron. Such equity credits represent patronage dividends which the board of directors of a cooperative, acting under statutory authority so to do, has elected to allocate to its patrons, not in cash or other medium of payment, which would immediately take such funds out of the working capital of the cooperative, but in such manner as to provide or retain capital for the cooperative and at the same time reflect the ownership interest of the patron in such retained capital. Equity credits are not an indebtedness of a cooperative which is presently due and payable to the members, but represent an interest which will be paid to them at some unspecified later date to be determined by the board of directors. Therefore, equity credits cannot be used as a setoff against a member's present indebtedness to the association.

226 Ga. at 791–92, 177 S.E.2d at 662.

Other jurisdictions have also determined that a cooperative member has no right to a setoff of his patronage equities against a debt owed to the cooperative. *Christian County Farmers Supply Co. v. Rivard*, 131 Ill.App.3d 835, 86 Ill.Dec. 951, 476 N.E.2d 452 (1985); *Forrest County Cooperative Assoc. v. Manis*, 235 So.2d 925 (Miss.1970); *Clarke County Cooperative v. Read*, 243 Miss. 879, 139 So.2d 639 (1962); *California Bean Growers' Assoc. v. Rindge Land & Nav. Co.*, 199 Cal. 168, 248 P. 658 (1926). Some states have, however, held that a cooperative's refusal to redeem or setoff patronage funds may subject it to judicial review if such refusal constituted an abuse of discretion or was based upon fraud or illegality. *See Furze v. Lake Region Packing Association, Inc.*, 311 So.2d 183, 185 (Fla.Ct.App.1975).

■ Upon consideration of the foregoing analysis, we agree with the trial court that Indian Creek has no statutory right to a setoff. Iowa Code chapter 499 makes it clear that the decision as to redemption or setoff of patronage funds is placed squarely with the cooperative's board of directors. We also hold, however, that under certain conditions, such as where the decision of the board of directors is predicated on fraud or oppressive conduct, that refusal to apply the patronage funds will be subject to judicial review. We do not believe the patronage funds sought to be setoff by Indian Creek are an indebtedness of the cooperative which is due and payable to members, but represent an interest which will be paid at some future date to be determined by the board of directors pursuant to the priority set forth in the cooperative bylaws.

The question remains, however, as to whether Mitchellville Cooperative breached a fiduciary duty to Indian Creek by allegedly not informing Indian Creek of its complete redemption policy. Indian Creek contends the Co-op should have developed a policy of redemption for corporate members long before it did in 1989. Indian Creek also maintains the Co-op breached a fiduciary duty by entering into a secret agreement with Land–O–Lakes whereby feed ration sales to Indian Creek financed the hog operations of Land–O–Lakes.

■ Iowa law is clear that a director or directors of a corporation owe the corporation complete loyalty, honesty, and good faith. *Midwest Management Corp. v. Stephens*, 353 N.W.2d 76, 80 (Iowa 1984). Such duty is owed the shareholders whenever the actions of the directors concern matters affecting the general welfare of the corporation. *Id.* As fiduciaries, the directors owe a duty to disclose information to those who have a right to know the facts. *Rowen v. Le Mars Mutual Insurance Co.*, 282 N.W.2d 639, 649 (Iowa 1979).

■ An examination of the record reveals Daniels was provided with and read copies of the Amended and Substituted Articles of Incorporation of the Co-op, and he also read the redemption policy of the Co-

op. Daniels was aware, as early as 1979, the Co-op had no policy for redemption of patronage stock in relation to other members. Despite this knowledge, Daniels continued to remain a member of the Co-op, urging the board of directors on a number of occasions to adopt a policy which would be more fair to the corporate members. Indian Creek participated in the patronage stock program with full knowledge of the redemption policy of the Co-op, and received $49,989.17 through the Co-op redemption plan during the time Indian Creek was a member. We note Daniels has both a law degree and a veterinary degree, and we suspect Daniels would be well versed regarding any rights he may have as majority shareholder of Indian Creek Corporation. Yet Indian Creek Corporation remained in the Co-op over ten years after becoming aware of the patronage stock redemption policy. We additionally note Indian Creek has cited to no evidence in the record indicating the Co-op's policy resulted in financial loss or resulted in Indian Creek incurring a huge debt of over $100,000 to the Co-op.

We recognize it is the duty of the board of directors to promote and further the financial security of both the Co-op and its individual members. However, as we noted earlier, the board of directors pursuant to Iowa Code chapter 499 has control over the actions of the Co-op subject to exceptions contained in the bylaws. Section 499.3 specifically authorizes the board of directors to deal with nonmembers, provided that during any one year such business does not exceed one-half the value of business done. In today's highly complex marketplace, it is wholly within the realm of expectation there will be some competition between members of a coop and nonmembers who do business with the coop.

We do not find the board of director's conduct so oppressive as to require us to reverse the trial court ruling. Unlike the board of directors in *Maschmeier v. Southside Press, Ltd.*, 435 N.W.2d 377 (Iowa Ct.App.1988), the board in the present case did not gut the corporation by depleting assets, nor did the directors pay themselves salaries grossly out of proportion to the profits of the corporation. The *Maschmeier* court found the board of directors had failed to commit any capital or labor to the corporation. 435 N.W.2d at 380. The court also found the board of directors had attempted to "freeze-out" the minority shareholders. *Id.* The court concluded the board's actions had laid great waste to corporate assets. *Id.* at 381. Indian Creek has cited to no evidence that any corporate assets have been wasted, or that any members have been subject to a "freeze-out" as in *Maschmeier.*

Upon examination of all the evidence, we conclude there is insufficient evidence to show the Co-op breached a fiduciary duty or failed to disclose relevant information to Indian Creek.

In summary, we hold that in the present case, based on the Co-op bylaws, Indian Creek was not entitled to an *immediate* redemption or setoff. We have considered Indian Creek's other assignments of error, and find they have no merit.

AFFIRMED.

HAYDEN, J., concurs.

HABHAB, J., specially concurs.

HABHAB, Judge (specially concurring).

Although I agree with the result reached by the majority, there is a part of the decision I think should not be addressed at this time for the question is not squarely before us. The majority addresses Indian Creek's contention that the Co-op's failure to adopt a separate "death" redemption policy for corporations constituted a breach of its fiduciary duty to Indian Creek. While the majority presents a concise and accurate analysis of the applicable law, both pro and con, the analysis was unnecessary because Indian Creek is not a defunct corporation. All of the germane law regarding these types of policies apply only when dealing with a "dead" corporation. The entire issue could have been dismissed on that basis alone for Indian Creek is a viable corporation.

I do not believe we should at this time address the following statement by the ma-

jority that "we hold that under Iowa law a cooperative is not prohibited in prioritizing the payment of patronage credits among deceased natural members, retirees and corporations. *See* § 499.33 (Iowa Code 1989). In the absence of a statute or bylaw to the contrary, corporations are not considered natural persons within the meaning of Chapter 499."

I believe it is unnecessary for us to go this far today. My greatest concern is how this will affect closed family farm corporations. As I read the opinion, we sanction actions by a cooperative that prioritize payment of patronage dividends to deceased natural members, but we do not grant the same priority to a member family farm corporation whose sole stockholder is deceased. I think we have ventured into an area that needs further exploration. I would defer answering that question until the matter is before us in the form of a justiciable issue.